1809.

## Webb and wife *against* Isaac Evans.

THIS was an appeal from a decision of the Chief Justice at a circuit court for *Lancaster* in *May* 1807. *Webb* and wife, who was formerly the wife of *Isaac Evans* deceased, demanded of *William* and *Isaac Evans*, (the former of whom died after action brought) the reasonable dower of the wife in one messuage, one barn, and three hundred acres of land more or less, as of the endowment of the said *Isaac Evans*, her late husband, whereof she had nothing. The defendant pleaded, 1st, a devise and acceptance by the widow in satisfaction of dower; 2d, a forfeiture by waste; and 3d, a release. Issue was taken upon all the pleas; and the jury found generally for the demandants, 200 dollars damages. Motions for a new trial and in arrest of judgment were made and overruled, and the defendant appealed to this court for the following reasons:

1. Because the devises and bequests in the will of *Isaac Evans* deceased to his widow, were inconsistent with, and left no fund to satisfy the claim of dower; and being accepted by the widow, were a bar to her claim of dower.

2. Because the verdict was contrary to law; the jury not having found that the husband died seised of any and what estate.

3. Because the writ demanded dower of all the messuages and lands of *Isaac Evans* deceased, though the demandants held part thereof under the devise of the former husband to the widow during her widowhood; which excluded her from claiming dower in the same during life.

The will of *Isaac Evans* was dated the 29th *November* 1781, and contained the following clauses, which alone were thought material upon the appeal: " Imprimis, I give and bequeath to " my beloved wife, one bed and furniture at her choice, six " chairs, one armed ditto, one case of drawers, one looking " glass, the whole of the tea furniture, one half of the pewter, " one hackney creature saddle and bridle, and one cow, her " choice. I likewise give to my said wife DURING HER WIDOW- " hood, during her widowhood.

A testator devises to his wife, during her widowhood, the front room in his farm house, a cellar, and the common use of the kitchen, oven, and draw well; he also gives her, in consideration of her schooling and well educating the children, the profits of his farm, until his sons come of age to possess it. He then orders his farm to be divided into two parts, one of which he gives to one son, reserving a privilege of water for the other part, which he gives to another son, upon their respectively coming of age; and orders the son, that takes a particular part, to keep a horse and cow for the wife, and to cut and lay firewood at her door, during her widowhood. *Held*, that the devises to the wife are not in bar of dower.

" HOOD, *the front room of the house wherein I now live, the small* " *cellar under the kitchen, with liberty of the common use of the* " *kitchen, oven, drawwell, and springhouse,* with liberty to pass " and repass to and from every of the same. I also give and " bequeath to my said wife, *in consideration of* HER SCHOOLING " AND WELL EDUCATING *my children, all and singular the pro-* " *fits, rents, and issues, of all my lands and appurtenances there-* " *unto belonging, from the time of my decease, until my sons ar-* " *rive to their respective ages to possess them as hereinafter* " *directed.*" " Item, It is my will, that my son *William,* or any " other person, *that shall enjoy the house and premises that I* " *now live in and on, shall keep for my said wife one horse crea-* " *ture and one cow, in good order, and likewise provide for her* " *sufficient of good firewood,* cut at a proper length and laid " handy to her door, *during her said widowhood.*" " Item, It " is my will, and I do hereby order *that all my land be divided* " *into two shares,* by a straight line across the whole, so as to " include one hundred and fifty acres and allowance to the up- " per or south share, and not to extend further northward than " the southernmost part of the garden; but if that should not " include the aforesaid number of acres, I order that so much " of my woodland on the west side adjoining, and by a paral- " lel line, be laid off to the south share, as will make up " the aforesaid one hundred and fifty acres and allowance." " Item, *I give and devise to my son Isaac, when he arrives to the* " *age of twenty-one years,* all the aforesaid south share of land, " together with all and singular the appurtenances thereunto be- " longing, to him his heirs and assigns forever, *reserving a pri-* " *vilege of water, as hereinafter expressed.*" " Item, *I give and* " *devise to my son William, when he arrives to the age of twen-* " *ty-one years, all the residue and remainder of my lands and* " *premises,* with all and singular the buildings and appurtenan- " ces thereunto belonging, *together with the privilege of taking* " *the water on his brother Isaac's land,* to water his meadow, " either as it is now or otherwise, as they shall agree, together " with liberty to pass and repass, and keep the water courses " in order, doing as little damage as the nature of the case will " admit of; to him his heirs and assigns forever." " Item, I " do hereby nominate constitute and appoint my beloved wife " *Ann,* whole and sole executrix to this my last will and testa- " ment. And it is my will, that she take all my personal estate

" *at a moderate value and appraisement*, to be made as soon
" as conveniently may be after my decease, *pay all the le-*
" *gacies as herein directed, and if it shall happen upon a settle-*
" *ment, that there is an overplus* remaining in her hands, that
" then *she shall divide the same equally to and amongst all my*
" *surviving children, when the youngest shall arrive at the age*
" *of eighteen years,* WITHOUT INTEREST."

The testator had eight children at the time he made his will,
and at his death in 1782: three sons and five daughters. *Wil-
liam* arrived at 21, in *January* 1787; and *Isaac* in *August* 1796.
*John*, the third son, to whom he gave 250*l.* to be paid when he
should arrive at 21, came of age in *March* 1791. To *Mary* and
*Hannah* he gave 150*l.* each, payable in a year after his death;
and to *Sarah, Ann,* and *Susannah,* 150*l.* each, payable when
they respectively arrived at 18. *Sarah* arrived at that age in
*January* 1786, *Ann* in *March* 1796, and *Susannah* in *August*
1798. The legacies therefore amounted to 1000*l.* payable at
different times; and the inventory of his whole personal estate
was a little better than 1300*l.* The wife of the testator remain-
ed on the estate devised to the defendant, until he came of age;
before which period she had been a considerable time married
to *Webb*.

*Montgomery* and *Hopkins,* for the appellants. We agree that
dower is a favoured claim; but it is barred by the acceptance
of a collateral devise from the husband, if it was so intended by
him. The only question is, in what manner the intention is to
be ascertained. It certainly need not be express; equity has
long since established a different rule; but if *any* intent to ex-
clude the wife can be collected from the circumstances of the
case appearing upon the will, it is sufficient; *Lawrence* v. *Law-
rence* (*a*), *Jones* v. *Collyer* (*b*); that is, any *plain* intent; we do
not contend for a bar, where the arguments each way are in equi-
poise. The rules by which the wife's right is to be tested, are
perfectly settled. They are founded in reason, and in a spirit
of deference to the testator's intention. One rule is, that the
wife cannot claim under, and at the same time in opposition
to the will. Another is, that she cannot take both devise and
dower, where by the will there is no fund to satisfy both. A

(*a*) 1 *Ld. Ray.* 438. 1 *Bro. C. C.* 593     (*b*) *Ambler* 732:

third, that she cannot take when the devises of the will and her dower are inconsistent. In all these cases the husband must have intended to exclude her; because it necessarily follows, that the wife, by claiming her dower, contradicts the will. *Villa Real* v. Lord *Galway* (*a*). In the present case he gives the wife during her widowhood, which is an estate for life determinable by her own act, *Vernon's case* (*b*), the front room and kitchen in his house, and the common use of the oven, drawwell, and springhouse: that is, he gives her about one third of the messuage and appurtenances, part of the fund from which dower is to arise. Here is one evidence of a plain intention to exclude her. She cannot have both the devise and the dower, because the last includes the first. It is like the case of *Hamilton* v. *Buckwalter*, decided by this court in 1798, where the testator devised to his widow his lands in *Lampeter* township, during her natural life of widowhood, and the rest of his lands to other persons. She married, and then brought dower for the *Lampeter* lands; and it was held, that the devise being of part of the lands from which dower was to arise, the acceptance was an extinguishment of dower. But he also gives her the profits of all his lands until his sons arrive at age to *possess* them: that is, *they* are to possess them at 21, and not *she*. Her dower therefore must defeat their possession of one third; which was held to be a strong circumstance in *Villa Real* v. *Galway*. She is to possess the *whole* under the will for many years after his death. It is certain then, that he intended to exclude her from dower at the instant of his death, because she could not have it at that time, and also hold under the will. But she could not have a right to dower at any other time. Her right was complete then, or it never could be; and therefore, as it was intended to be, and was, a bar at his death, it was a permanent bar. She is also, during her life of widowhood, to have a horse and cow kept for her by the occupant of his house, and firewood cut and laid at her door. This too is out of the fund which is to satisfy dower. It is in the nature of an annuity from this fund, which brings it within *Jones* v. *Collyer*, *Gosling* v. *Warburton* (*c*), *Villa Real* v. *Galway*, *Arnold* v. *Kempstead* (*d*), and *Wake* v. *Wake*. (*e*) The amount is of no consequence; for in *Jones* v. *Collyer* and *Wake* v. *Wake*, the annuity was far less than the dower. The will then proceeds to devise a moiety of his lands

(*a*) *Ambler* 682.          (*c*) *Cro. Eliz.* 128.          (*e*) 3 *Ves. jr.* 335.
(*b*) 4 *Rep.* 3.            (*d*) *Vid. Ambler* 682.

to *Isaac*, reserving a privilege of water for the other moiety, which he gives to *William*. But the claim of dower is inconsistent with both the reservation and the grant; it must in all probability defeat both for the widow's life. The whole will therefore contains every ingredient that is necessary to raise an intention to exclude. That the widow would be destitute after the children arrived at age, if it were true, would be her own fault; because she was not bound to accept. But it is not true. She had the profits of the land for many years, and the inventory of about 1300*l.* subject to legacies as they should fall due, without interest; which was worth about 700*l.* The case of *Kennedy* v. *Nedrow* (a) is very distinguishable from this. In that case there were funds to answer both the devise and dower; the suit was for lands not devised to the wife; and there was no intention, apparent upon the will, that the wife should not take, nor any inconsistency, or overthrow of other devises, produced by her taking.

The jury have found damages. The statute of *Merton*, by which damages are given in dower, extends only to lands of which the husband died seised. They should therefore have found that he died seised, and of what estate; and for want of it, the judgment of damages must be reversed. *Bull. N. P.* 116. *Co. Litt.* 32. *b.* The declaration does not even aver a dying seised; which puts the objection beyond doubt.

*C. Smith* and *Tilghman* for the demandants. In the first place, the record cuts up the argument of the tenant by the roots; for the acceptance was put in issue, and with the other pleas negatived by the general finding of the jury. But upon the will, the case is equally with us. Dower is a right of all others the most favoured. It is the widow's property. She does not hold it at the will of her husband; but has as firm an interest in it as he has in the fee, by gift of law which no conveyance by him can defeat. Her claim is better than the heir's, whom the ancestor may disinherit; while she can be deprived only by certain crimes. If therefore nothing but an express intention, or the most plain and necessary implication, can disinherit the heir, *a fortiori* as to the wife; in her case it should be incontrovertible. The argument which is drawn from the inconsistency of dower with the devise to the sons, proves

(a) 1 *Dall.* 415

1809.

WEBB
v.
EVANS.

too much. It proves that every devise to the wife must be in bar of dower, if the husband wills away his lands. Such inconsistency is of no consequence; the testator meant to give only what he had a right to give; and his devisee must take subject to dower and all other incumbrances. *Strahan* v. *Sutton.* (a) The only question is, whether dower is inconsistent with the devise to the wife. And upon this, it is not sufficient that the husband did not intend her to take. She does not want his intention in her favour. He must have intended to exclude her; and this must be made out from the will to be so *clear, plain,* and *incontrovertible,* that the husband could not *possibly* give what he has given, consistently with her claim of dower. *French* v. *Davies.* (b) The first objection is, that she has a room &c. for life in the farm house; and of the same kind is the other, that she is entitled to firewood and the keeping of a horse and cow. The old cases of annuities and devises out of the dower fund, have been very much shaken, if not overthrown, by modern decisions. It is impossible that *Villa Real* v. *Galway*, and *Jones* v. *Collyer*, can stand with lord *Loughborough's* decision in *Pearson* v. *Pearson*, (c) and lord *Thurlow's* in *Foster* v. *Cook;* (d) the rule in these cases being, that if there is sufficient to satisfy the annuity and the dower, it does not shew an intention to bar. Neither can they stand with *Kennedy* v. *Nedrow;* for there the widow was entitled to an annuity out of the land in which she claimed dower, and at the same time took fee simple lands under the will, to four times the value of the dower; but there being enough to satisfy both, she recovered. The court there settled the rule for this state, that to bar her, the implication, that she should not take both, must be *strong* and *necessary; or* the devise must be entirely inconsistent with the dower; *or* the dower must prevent the whole will from taking effect. Now where is the inconsistency here? If the entire house had been given to her, how would it have interfered with her dower in the lands? And as part of the house is given, that she may have this particular portion at all events, may it not stand perfectly well with her claim to the residue? As to the firewood, &c. it is a personal service imposed upon the son. There is not then the least evidence of intention to exclude; still less, is there that clear, plain, and incontrovertible

(a) 3 *Ves. jr.* 251.          (c) 1 *Bro. C. C.* 290.
(b) 2 *Ves. jr.* 578.          (d) 3 *Bro. C. C.* 347.

evidence. He has devised the rest of his estate generally;
it has therefore gone *cum onere*, and there is a great abundance
to satisfy all claims. Then as to the devise of the profits and
possession of the lands till the sons should come of age: the
very question was raised in this court, upon the will of *Thomas
Grubb*, who gave the benefit of his real estate to his wife until his
sons came of age to *enjoy their possessions;* and it was held not
to be a bar. The wife was not put to her claim of dower, until
the sons came of age; but it vested and was complete upon the
death of the husband. There are, however, several cases in
which dower may be suspended. 9 *Viner* 243. *pl.* 3. and 4.
We might argue with safety, even that the husband intended
her to take. She has the rents and profits of a moderate estate;
but it is upon the express condition of schooling and well
educating the children. She also has the personal estate at an
appraisement, subject to the legacies to the children, among
whom the whole surplus is divisible when the youngest is
eighteen. At that time she is left without any thing upon
earth, except her room, her horse, &c. unless the husband
intended her the benefit of dower.

The jury, in practice, very rarely find a seisin; nor is it
averred in any of the precedents of declarations in use
among us. The damages must be presumed to have been
given for a detention of the dower after a dying seised. But,
if the court have any doubt, the demandants may release the
damages, and pray judgment of the land; and they may after-
wards aver that the husband died seised, and have a writ of
inquiry. 9 *Viner* 291. *pl.* 21.

YEATES J. This is an appeal from the decision of the cir-
cuit court of *Lancaster* wherein a verdict passed for the plaintiffs
and the court overruled a motion for a new trial. The ques-
tion arises on the will of *Isaac Evans*, whether the widow, ac-
cepting the devises therein expressed to her, is thereby barred
from recovering dower in the lands devised to her son *Isaac*.

The will is dated 29th of *November* 1781, and is in these
words. [His Honor here referred to the material clauses of the
will.]

A variety of cases, upon this subject, occur in the *English*
books. At law it is fully agreed that when the husband devises
*generally* to the wife, the same cannot be averred to be in sa-

1809.

WEBB
v.
EVANS.

tisfaction of dower, unless it be so expressed. (a) Courts of equity have relaxed this rule; and in some instances where there appeared an evident intention to bar the wife of dower, where it would disappoint the will in case she took dower, and where the devises to the widow and her claim of dower would be inconsistent with each other, have put her to her election. I have heretofore in this court attempted to review the *English* cases on this subject, in the order of time in which the decisions took place; and to shew that the principles of those decisions could not be reconciled. The late case of *French* v. *Davies* in 1795, 2 *Ves. jr.* 572. proceeds on the ground that a widow shall not be put to her election to take under the will of her husband, or her dower, except by *express declaration* or *necessary inference* from the *inconsistency* of her claim with the dispositions of the will. The same principle of decision was laid down by the master of the rolls in *Strahan* v. *Sutton* in 1796. 3 *Ves. jr.* 249.

Several cases of dower have occurred in this court and at nisi prius. In *Kennedy* v. *Nedrow et al.* (b) it was determined in bank, that dower cannot be barred by a collateral recompense, though under the terms of the will the widow took an annuity out of lands to which her claim of dower extended, and though she had brought partition for dividing lands under a devise in the will, in which it was acknowledged that the moiety of the premises out of which dower was claimed belonged to the tenants. In *Hamilton* v. *Buckwalter*, wherein judgment was entered for the tenant in *December* term 1798, dower was claimed in 294 acres of land in *Lampeter* township, *Lancaster* county. The tenant pleaded that *John Patton*, the former husband of the demandant, devised to her *all his lands in Lampeter township* during her natural life of widowhood; but in case she married, then she was to leave the plantation, on receiving 50*l.* a horse and saddle, with her bed and bedclothes; and this was averred to be in lieu and satisfaction of dower. The majority of the court were of opinion, that they might in the construction of a will *necessarily imply* an intention not particularly specified in words, though not on arbitrary conjecture, even if founded on the highest degree of probability. (c) The widow could not possibly hold the lands under the will,

(a) *Co. Litt.* 36. b. 4. *Co.* 4. a. *Bro. Ab. devise. pl.* 69.
(b) 1 *Dall.* 415.                    (c) 3 *T. R.* 473.

1809.

WEBB
*v.*
EVANS.

and be endowed thereof at the same time. The devise to her of those lands during widowhood was a freehold interest determinable on her own act only; (a) and such a devise might be pleaded in bar of dower, where the widow entered under the will, and afterwards intermarried. (b) She could not insist on continuing in possession after receiving 50l. and the specific legacies devised to her on *leaving* the premises. Her claim of dower therefore was utterly inconsistent with the express words of the will, and incompatible with the plain intention thereof. I have gone into the grounds of this decision more fully, as the defendant's counsel have endeavoured to assimilate the two cases.

The case of *Joseph Creacraft et uxor* v. *Wions*, on the will of *Jabez Baldwin* (c) came before two of us in the county of *Washington;* and *M'Cullough et uxor* v. *Grubb* likewise in *Lancaster* county. The latter case resembles that before us in one particular, that the testator there had devised the residue of the personal estate and all his real estate to his widow, until his several sons arrived to their respective ages of 21 years. The different members of this court held that the widow was entitled to dower.

But it has been objected, that a clause in this will forms a material distinction between the two cases. The words are " I give to my wife *Ann* during her widowhood the front " room of the house wherein I now live, the small cellar under " the kitchen, and the common use of the kitchen, oven, and " drawwell, and the privilege of passing and repassing to and " from every of the same." To this it is a sufficient answer to say, that the house, kitchen, and premises, out of which these privileges are granted, do not stand on the lands devised to *Isaac Evans* the defendant in this suit; and it is immaterial at present to determine what operation this would have, as to the lands devised to *William.* But waiving this answer, there does not appear any incompatibility between this devise and the widow's claim of dower. She was to educate and school the children until the sons attained their full age; and the profits of the lands during their minority were given to her for that purpose. It would be harsh indeed to ascribe to the testator the intention, that his widow after that time should remain de-

(a) 4 Co. 3. a. Co. Litt. 36. b.          (b) Moor. 31. case 102.
(c) Addison 350.

1809.

WEBB
v.
EVANS.

pendent on the bounty of her children, in a state of helpless penury. But suppose this to be the case, we may say with the master of the rolls in *French* v. *Davies*, "We are not now say-"ing what the testator would have done, if he had recollected "his wife's dower. Privately we may almost be satisfied, if he "had recollected it, he would have made a condition upon her. "He has not done so expressly. Has he done it, so that we "can, as judges, say it is impossible he could mean her to have "both? We cannot upon this will say she has disappointed "him." Or, according to his language in *Strahan* v. *Sutton*, "we must suppose every testator meant to give all he had a "right to give. The case is clearly decided, that a gift of an "estate out of which the widow is dowable, does not prevent "her from taking any other estate the testator has thought "fit to give her."

In fact this very question came before the late chief justice *M'Kean* and myself, in an ejectment commenced by the lessee of *William Evans* against the now plaintiff *Webb*, on a case stated at nisi prius at *Lancaster* in *May* 1794. We took time to advise thereon after the argument, and in *January* term 1795, delivered our opinion with our reasons, that the claim of *Webb* in right of his wife to her dower, was not inconsistent with or in contradiction of the will. I see no reason for altering the opinion which I then formed on due deliberation.

But my mind is not yet satisfied as to the manner of entering judgment on the verdict. The late mournful event has put it out of my power to examine the law, and consult the entries in such cases, as fully as I intended; and therefore the cause must be continued under advisement.*

BRACKENRIDGE J. concurred.

*Cur. adv. vult.*

At a subsequent day the demandants by their attorney released the damages found by the jury; and on motion, the court gave

Judgment for the demandants.

* His Honour, at the close of his opinion, informed the bar, that the late Mr. Justice *Smith* had seen and concurred in it.