GILMAN *vs.* LOWELL.

*Slander* lies for saying of another, "he has sworn *falsely*, and I will attend to the *grand jury* respecting it," without a *colloquium* shewing the speaking of the words to refer to proceedings in which perjury could have been committed.

*Circumstances* which *disprove malice*, but do not tend to establish the truth of the charge, may be given in evidence *in mitigation of damages;* thus, where a party charged another against whom a justice's judgment was obtained, with false swearing, in making oath that he was a *freeholder*, he was allowed to shew, that on search for the deed in the clerk's office, where by law it was required to be recorded, it was not found, owing to a mistake of the recording officer in *indexing* his records.

Notwithstanding such proof, the plaintiff is entitled to recover.

*It seems* that in the action of slander, the plaintiff's rank and condition in life may be given in evidence to enhance the damages.

THIS was an action of *slander*, tried at the Clinton circuit in January, 1830, before the Hon. ESEK COWEN, one of the circuit judges.

A witness for the plaintiff testified that in December, 1828, the defendant accused the plaintiff with having *sworn falsely* in regard to some of their business, and said something about *complaining to the grand jury* or attending to the grand jury. In May, 1829, the plaintiff, attended by a friend, called on the defendant and demanded an explanation—the defendant orderd him out of his store ; the plaintiff persisted in his demand, when the defendant told him that he had *sworn* before Lynde that a deed was on record, and that he had searched for it, and the clerk had searched for it, and could not find it, and that he would attend to the *grand jury* respecting it. The plaintiff rested, and the defendant moved for a *nonsuit*, insisting that the words spoken were not actionable, without proof of a *colloquium* in regard to some legal proceeding in which *perjury* could be committed. The motion for a nonsuit was overruled. The counsel for the defendant, in opening his defence to the jury, stated that it would be proved that Lowell, the defendant, had recovered a judgment against Gilman, the plaintiff, and one Wood, before justice Lynde, for a sum exceeding $25; that Lowell asked for an execution to issue

ALBANY,
Jan. 1832.

Gilman
v.
Lowell.

forthwith, and made the requisite oath; that Gilman com-
plained that such application was unnecessary, and to shew it
to be so, made oath voluntarily before the justice that he was
a freeholder and had a deed of land, and that the same was
recorded in the clerk's office of the county of Clinton; that
Lowell thereupon withdrew his application for an execution,
took a transcript of the judgment, filed it in the clerk's office,
and requested the clerk to search for the record of the deed to
Gilman, so that he might know the premises upon which his
judgment would be a lien. That the clerk search the re-
cords and informed Lowell that no such deed was on record;
that Lowell requested the clerk to search with great care, stat-
ing to him the reason of his particularity; that the clerk made
a second search, and again told him there was no such deed
on record; that Lowell subsequently caused another search to
be made, which was equally unsuccessful. That in fact, how-
ever, *the deed was recorded*, but a mistake had occurred in *in-
dexing* the records, and the error was discovered only by the
production of the deed to the clerk, from an endorsement on
the back of which the time of its record was learnt. Previous,
however, to the discovery of the error, Lowell had taken out
execution on his judgment, and supposing he had no security
on real estate, pressed the collection of it from other property,
of which Gilman complained, and the conversations which
had been testified to were the consequence, which took place
before Lowell had any knowledge of the deed being in fact
recorded. To the plea of the general issue put in by the de-
fendant, he had subjoined a *notice*, that on the trial of the
cause he would prove, that although the statements made by
Gilman in respect to his deed were true, that he held such
deed, and that the same was in fact recorded, *yet*, that after
such statements by Gilman, and before the speaking of the
words, he, Lowell, caused diligent search to be made at the
clerk's office for the deed, and that owing to a mistake in the
indexing of the records, the record of the deed in question
could not be found, and that he, Lowell, was informed by the
clerk that it could not be found, and that at the time of the
speaking of the words charged in the declaration, he had rea-
son to be believe, and did believe, that no such deed was in fact

recorded. The evidence thus offered to be given was object- <span style="float:right">ALBANY,<br>Jan. 1832.</span>
ed to by the plaintiff, and overruled by the presiding judge.
The plaintiff had a verdict for $250, which the defendant now
moved to set aside.

Gilman<br>v.<br>Lowell.

*S. Stevens*, for the defendant. The words in themselves
are not actionable, notwithstanding the addition to the charge
that the defendant *would complain to the grand jury*. Action-
able words are those that convey the charge of perjury in a
clear unequivocal manner, and which admit of no uncertain-
ty. *Hopkins* v. *Beedle*, 1 Caines, 349. See also 3 Wils. 186.
6 T. R. 194. 1 Rolle's Abr. 70. Cro. Jac. 190. 1 Johns. R.
505. 2 id. 10. Although the party intended to impute a
crime, if the words in legal acceptation do not import the
charge of a crime, the speaker is not liable. Cro. Eliz. 416.
This principle is fully illustrated in *Dexter* v. *Taber*, 12 Johns.
R. 239, where the defendant manifestly intended to charge
the plaintiff with *felony*, yet because he stated the crime to
consist in stealing hoop poles and saw logs from off the land
of third persons, and the terms being held to be applicable
equally to standing as to felled timber, the jury were instruct-
ed that they might consider the words as applicable to the for-
mer, and if they should so find, that the defendant was not lia-
ble; and the instruction thus given to the jury was sanctioned
by the court in term. See also Cro. Jac. 446. The law pre-
sumes that the by-standers understood the words spoken, as
the law regards them. The words being spoken in reference
to a particular transaction, and so stated at the time, it was in-
cumbent on the plaintiff to have shewn that in the transaction
alluded to, the crime of perjury might have been committed,
that is, that the swearing was of that kind, that if a party
swore false, he might by law be punished for perjury. 13
Johns. R. 81. 20 id. 388. 9 Cowen, 30. 1 Wendell, 475. 4
id. 531. At all events, the evidence offered by the defendant
should have been received in mitigation of damages.

*B. F. Butler*, for the plaintiff. The rule laid down in *Hop-
kins* v. *Beedle*, 1 Caines, 349, prevails no more, either here or
in England. Slanderous words, it is now conceded, are to be

ALBANY,
Jan. 1832.

Gilman
v.
Lowell.

understood according to their natural import, and as ordinary hearers would understand them. 6 Cowen, 87. See also 5 id. 503. 2 Wendell, 536. 4 id. 325. 3 Cowen, 331. By adding to the charge of false swearing, that he would complain to the grand jury, the by-standers were given to understand that the defendant imputed to the plaintiff an indictable offence. Such was the construction given by this court in *Fox* v. *Vanderbeck*, 5 Cowen, 513, to the words there spoken ; the defendant interrupted the plaintiff while testifying, and told him it was not so, and requested the justice to keep the minutes of his testimony, as he wanted them to prosecute for perjury. If the words were actionable, it was not necessary to prove that they were spoken in reference to a transaction in which the crime imputed might be committed ; the cases cited in support of the defendant's position were cases of words not actionable.

Was the evidence offered in mitigation admissible ? The injury to the plaintiff is as great where the defendant believes the charge to be true which he makes, as where he knows it to be false. See the cases stated by Chancellor WALWORTH, in *King* v. *Root*, 4 Wendell, 137, and his comments upon them. The belief of the defendant in the truth of the charge is no bar, nor can it be given in evidence in mitigation, unless where the plaintiff has given evidence in aggravation. For privileged communications, as in giving the character of a servant, no action lies, unless *express malice* is shewn ; and where evidence in such cases is given to shew malice, the defendant may rebut it by proof, to shew that he had reason to believe what he asserted. In ordinary cases of slander, the false speaking of the words shews malice ; the law implies malice, and the defendant cannot rebut the conclusion. If evidence of the belief of the defendant is at all admissible, it can be received only under a special plea admitting the falsehood of the charge. 1 Pickering, 19.

*By the Court*, SAVAGE, C. J. There are two questions presented in this case : 1. Whether the words proved are actionable in themselves ; 2. Whether the evidence offered in mitigation should have been received.

Whether the words are actionable or not, depends on the question whether they convey to the hearer the charge of perjury. "Actionable words are those that convey the charge of perjury in a clear unequivocal manner, and which admit of no uncertainty." To say, "You have sworn to a lie," is not actionable, for it may mean extra-judicial swearing. 1 Caines, 347, 9. To say of another that "he has sworn falsely; he has taken a false oath against me in 'squire Jamison's court," is not actionable, there being no colloquium about that court, or any cause pending there, and no averment that Jamison had authority to hold a court in which an oath might be judicially administered. But where it appears that a lawful oath was administered in a court of law, and the witness is contradicted when testifying to a material point, and it is so averred in the declaration, an action lies. 6 Johns. R. 82. Where the charge is *perjury*, it will be intended that it was in some court of justice, or before some officer where perjury might be committed; "but for a charge of false swearing, no action lies, unless the declaration shews that the speaking of the words had a reference to a judicial court or proceeding." 2 Johns. R. 10, 12. 1 id. 505. 1 Bin. 573. 2 id. 60. It is well settled that words are to be understood according to their natural import, and as ordinary hearers would understand them. 6 Cowen, 87. And in *Fox* v. *Vanderbeck*, 5 Cowen, 513, words like those charged in this declaration and proved, were held to convey the charge of perjury. In that case, while the plaintiff was testifying before a justice, the defendant interrupted him, and told him it was not so. The defendant also requested the justice to keep minutes, saying he wanted them to prosecute for perjury; or he wanted them to go to some lawyer, to prosecute the plaintiff. Sutherland, justice, in giving the opinion of the court, says, "The words are actionable, they are calculated to convey to the mind of an ordinary hearer the imputation of the crime of perjury." In this case there was a distinct charge of false swearing, followed by a threat that the defendant would complain to the grand jury, or attend to the grand jury respecting it. Why complain to the grand jury, but to procure an indictment? And why indict for false swearing, unless perjury has been committed? A person is not pun-

ishable for false swearing, unless he has committed perjury. An intimation, therefore, that the plaintiff was indictable for swearing false, necessarily contains an assertion that he has committed the crime of perjury. On the first point, therefore, I think the circuit judge was correct in deciding that the words taken altogether, contained a charge of perjury, and are actionable.*

The next inquiry is, whether the judge was right in rejecting the evidence offered in mitigation. What facts and circumstances shall be given in evidence under the general issue in mitigation of damages, is a question not free from difficulty. The subject was considered by this court in the case of *Root* v. *King*, 7 Cowen, 613. The action is founded in supposed damage to the plaintiff, arising from the malice of the defendant. Where words are actionable in themselves, neither the damage nor the malice are required to be proved; the speaking of the slanderous words is all the proof necessary; the damage on the one hand, and the malice on the other, are both necessary consequences, and the action is therefore sustained; but in estimating the damages which the one has received, and the other should pay, various circumstances are legitimate subjects of consideration. If the plaintiff is a person of tarnished reputation, he cannot have received much damage; and the defendant should be punished according to the degree of malice by which he was actuated; the general character of the plaintiff is therefore a proper subject of investigation, in ascertaining the amount which the plaintiff is entitled to recover; and generally speaking, the defendant should pay in proportion to the quantum of malice by which he has been actuated. These remarks are not applicable to a plea of justification, because, if the defendant can prove the truth of the words spoken, no action lies, however malicious his motives may have been.

---

* Where the words were, "Thou art a forsworn man; I will teach thee the price of an oath, and will set thee on the pillory," they were held actionable, because the defendant shewed that he meant to impute a perjury, for which the plaintiff ought to stand in the pillory. 1 Viner's Abr. 407, pl. 11. So, to say of another, "You swore to a lie, for which you now stand indicted," was held to be actionable. *Pelton* v. *Ward*, 3 Caines, 73.

ALBANY,
Jan. 1832.

Gilman
v.
Lowell.

Before the case of *Underwood* v. *Parks*, Str. 1200, under the plea of the general issue, the defendant might avail himself of any defence. It was then decided that if the defendant intended to justify, he must plead his justification, that the plaintiff might know what defence he was to meet. According to some recent *nisi prius* cases in England, it seems that the defendant, under the general issue, may prove any thing short of a justification—suspicious circumstances and slanderous reports of the same character with the words spoken, though the judges who admit this testimony concede that they cannot reconcile it with correct principles; nor is it thought to be consistent with the rule established in *Underwood* v. *Parks*. Those late decisions are not authority, in this country, and courts in the different states have established rules for themselves, where the legislatures have not done it. From the current of decisions in this state it is settled that the defendant may justify, if he chooses, but if he does so, he admits the malice on his part, and of course can resort to no defence which is based upon the absence of malice. It results from this principle, I think, that where a defendant is prosecuted for words, he has two courses before him in shaping his defence; the one is to justify; if he succeeds in his justification, he is of course exonerated from all liability; if he fails, the attempt to justify enhances damages. The other course is to shew his innocence, either by a total denial, or by shewing circumstances which prove his motives to have been innocent. If he takes the latter course, and undertakes to shew his innocence, he ought not to inculpate the plaintiff; by declining to justify, he virtually admits that he cannot do so, and of course the truth of the charges is abandoned; he ought not then to be permitted to do indirectly what he dare not do directly. Under the influence of these considerations, we intimated in *Root* v. *King*, 7 Cowen, 633, that the true rule was, that the defendant may, under the general issue alone, shew any thing which repels the presumption of malice, and does not apply the truth of the charge, or tend to prove it true. The reports of a similar character were prevalent in the neighborhood, might shew a less degree of malice in the defendant, but they have a tendency to prove the truth, and are, therefore, inadmissible; not that reports testimo-

ny to convict of a crime, but they destroy reputation' and have, in part, the same effect as proof. It often happens that reports, prejudicial to the plaintiff, have prevailed extensively, before he commences a suit ; and the fact that his character is suffering from those reports unmerited opprobrium, drives him to a prosecution. If, then, he is to be met by those reports, and only allowed a nominal verdict, which is about equal to a verdict against him, " he had better," in the language of Chief justice Parsons, 6 Mass. R. 518, which I have before quoted in *Matson* v. *Bush*, 5 Cowen, 500, " sink privately under the weight of unmerited calumny, lest by attempting his justification, he should give notoriety to slanders which had before been circulated only in whispers." Whether the plaintiff's rank and condition in life may be shewn either to enhance or diminish the damages, it is unnecessary now to decide ; but I may be permitted to say that it is so held in Massachusetts, *Larned* v. *Buffinton*, 3 Mass. R. 552 ; and it is not perceived that this principle has any necessary connection with the question of malice ; it is proper, under the head of enquiry into general character. Persons in different stations would be differently damnified by the same slanders.

In *Larned* v. *Buffinton*, the case last cited, Chief Justice Parsons says, ' Where, through the fault of the plaintiff, the defendant, as well at the time of speaking the words, as when he pleaded his justification, had good cause to believe they were true, it appears reasonable that the jury should take into consideration this misconduct of the plaintiff, to mitigate the damages." In *Alderman* v. *French*, 1 Pick. 19, this dictum is denied, unless the defendant admits he was mistaken, and thus afford all the relief he can against the calumny which he has published. In *Bodwell* v. *Levan*, 3 Pick. 377, evidence was rejected which had a tendency to prove the truth of the words ; and in *Wormouth* v. *Cramer*, 3 Wendell, 396, it was held, that particular facts which might form links in the chain of circumstantial evidence against the plaintiff, cannot be received under the general issue, in mitigation of damages. In that case there was a charge of theft, and the defendant offered to prove, that after a prosecution against another person, the plaintiff sent home the stolen property ; the possession of

the property would be a link in the chain of circumstances to convict the plaintiff, and therefore it was rejected. In *South Carolina,* it seems, that facts and circumstances shewing a ground of suspicion may be shewn in mitigation, though not amounting to actual proof. *Buford* v. *McLuny,* 1 Nott & McCord, 268. In *Virginia* such circumstances are not permitted in mitigation. In *Cheatwood* v. *Mayo,* the defendant had called the plaintiff a " hog thief." The defendant offered to prove by a witness, that he, the witness, had lost a hog, and charged plaintiff's slave, and applied to the plaintiff on the subject; when plaintiff acknowledged that such an hog had been killed at his house, and agreed it was W.'s hog; but it was rejected in the supreme court of Amherst, and affirmed in the supreme court of appeals. 5 Munford, 16. The same principle is found in *McAlexander* v. *Harris,* 6 Mun. 465. In *Connecticut,* Chief Justice Hosmer, in *Hyde* v. *Bailey,* 3 Conn. R. 466, says, that " the defendant on the general issue, may prove, in mitigation of damages, such facts and circumstances as shew a ground of suspicion not amounting to actual proof of the guilt of the plaintiff," and relies on *Knobell* v. *Fuller,* and —— v. *Moor,* 1 Maule & Sel. 285. In *Treat* v. *Browning,* 4 Conn. R. 414, the same learned judge enters more at large into the subject, and considers several cases; on the question of admitting reports, he limits their admission only as proof of *character,* and says, " if the evidence went beyond the proof of reputation it should have been rejected, as there had been no notice of an intended justification." He adds, that they are hearsay only, and evincive of character; and that on a critical examination it is apparent that the cases which have sanctioned the admission of general reports have not gone beyond these bounds," and cities 2 Campb. 251, and —— v. *Moor,* 1 Maule & Sel. 285. If those cases go no further, they are not objectionable; but they have been considered here as sanctioning the giving in evidence of the specific reports, without answering to the question of the plaintiff's general character. Chief Justice Hosmer cites with approbation the language of Smith, justice, in *Kennedy* v. *Gregory,* 1 Bin. 85, where he says, " 1 challenge ingenuity to point out one evil which would result from such evidence being given, as matter of jus-

ALBANY,
Jan. 1832.

Gilman
v.
Lowell.

tification without notice, which would not follow to almost the same degree were it allowed in mitigation of damages ;" and adds, " and I am incapable of resisting the same conclusion ; when I consider the case on principle, I am strongly impelled to the opinion that the offered testimony was rightly rejected. The argument for its admission proceeds on the ground that the evidence would diminish the presumption of malice, and of consequence, lessen the damages. It is an indisputable truth that evidence which falls short of a justification may be competent to mitigate damages ; and that to this end such facts and circumstances as show a ground of suspicion, not amounting to actual proof of guilt, are admissible in evidence ;" citing *Knobell* v. *Fuller*, Peake's Evidence.

It will be found that in all the American courts, where facts and circumstances of suspicion are permitted in mitigation, they are admitted on the strength of the English *nisi prius* cases above referred to, in one of which Chief Justice Mansfield frankly admits that he could not answer the arguments against it. Chief Justice Hosmer virtually says it is inadmisble upon principle, but upon authority it is. Mr. Starkie, in his Treatise on Slander, 408, 9, 10, in commenting on these cases, thinks the rule that any matters short of actual proof are admissible in mitigation, is inconsistent with the rule in *Underwood* v. *Parks*, that the truth should not be given in evidence without a special plea. General evidence as to the plaintiff's *suspicious character*, he thinks proper ; but not facts tending to shew *actual guilt*. These cases shew that learned jurists in this country and in England, who have admitted evidence of reports and of suspicious circumstances, have done so upon what they considered authority, and not because they are admissible upon principle. The more I have considered this subject, the more I am convinced that the supreme court of Massachusetts and this court have proceeded upon the only correct rule, in excluding under the general issue, all mitigating circumstances which have a tendency to prove, what cannot be proved under such a plea, the truth of the words ; but that any circumstances of mitigation which *disprove malice*, but do not tend to prove the truth of the charge, are ad-

missible. This was the point in *Mapes* v. *Weeks*, 4 Wendell, 662.

These remarks are rather a discussion of the general question of mitigation (into which I have been led by the ingenious arguments of counsel) than of the precise question in this case ; that question, in my apprehension is, whether the facts offered to be shewn would disprove malice, and would not tend to prove the truth of the charge of false swearing. The words were that the plaintiff had sworn falsely, that he had sworn before Lynde to that which defendant could not find on record, and that he would attend to the grand jury respecting it. The defendant in his notice disclaimed all intention to prove the truth, and admits that what the plaintiff swore was true, but to shew that what he said was not spoken through wantonness and malice, he offers to prove that he made search in the clerk's office, and no such deed could be found, owing to a mistake of the clerk in indexing the records ; what was offered to be shewn certainly could not tend to prove the truth, when the defendant admits in his notice, that the words were untrue ; and it seems to me they go far to diminish the *quantum* of malice ; perhaps they shew as far as can be done, the absence of malice. The plaintiff, however, must recover, for the speaking actionable words is sufficient evidence of malice to sustain the action ; but the facts offered to be proved shew that the defendant really believed that he had been deceived by the plaintiff, and was in danger of losing his debt, and that he did not make the charge until more than one search had been made at the clerk's office ; and when this is taken in connection with the proof in the cause, that on one occasion the language was drawn from the defendant by the provocation of the plaintiff, who went to defendant's store with a witness with intent to draw from him words upon which he might prosecute, I think the evidence peculiarly proper. I am of opinion that a new trial be granted, costs to abide the event.