# THE STATE *vs.* BURNHAM.

A libel is an offence, for which the party is liable to be indicted and punished.

If a person publish defamatory matter of another, without any lawful occasion for making a publication, and where the only end to be attained is to gratify a spirit of detraction, or to bring the subject of it into contempt and disgrace, he cannot justify or excuse the publication ; and in such case an indictment may be sustained, whether the allegations are true or false.

If the end to be attained by a publication is justifiable, as, if the object is the removal of an incompetent officer, or to prevent the election of an unsuitable person to office, or to give useful information to the community, or to those who have a right and ought to know, in order that they may act upon such information, the occasion is lawful ; and the occasion being one in which matter of such nature may properly be published, the party making the publication may either justify or excuse it.

Where, however, there is merely a color of a lawful occasion, and the party, instead of acting in good faith, assumes to act for some justifiable end merely as a pretence to publish and circulate defamatory matter, he is liable in the same manner as if no such pretence existed.

In order to justify, the party must prove the truth of the matter alleged, and the justification must be as broad as the charge. It is not a sufficient justification to show that part of the matter is true.

If a defendant justifies by showing that there was a lawful occasion for the publication, and that the matter published is true, his motives in making the publication are immaterial.

If the defendant cannot justify by showing the truth of the matter charged, he may excuse the publication by showing that it was made on a lawful occasion, upon probable cause, and from good motives.

If an individual publishes as a fact what is not true, being instigated not by a de-
sire to attain a justifiable end, but by actual malice, with a purpose of injur-
ing another, it is not a sufficient excuse for the act that he had probable grounds
to believe that the matter was true.

INDICTMENT for publishing a false, malicious, and defama-
tory libel upon Lyman B. Walker, at the time solicitor for
the county of Strafford, in the form of an address, or peti-
tion to the Senate and House of Representatives, containing
allegations that said Walker was intemperate, incompetent
to the discharge of the duties of his said office, had miscon-
ducted in many instances, and that his character was noto-
riously immoral, and praying for his removal from office.

On the trial, it appeared in evidence that the defendant
caused about two hundred copies of the alleged libel to be
printed, many of which were sent by him to individuals in
the county of Strafford, and in one or more instances direct-
ed to persons living elsewhere; and that it was never pre-
sented to the legislature, nor did it appear that the defendant
ever acted in the matter farther than to circulate the paper.
There was some further evidence, tending to show that the
defendant did not design to pursue the petition, but had some
hostility towards said Walker; and the counsel for the state
contended that putting the matter in the form of a petition
to the legislature was a mere pretence, more securely to cir-
culate defamatory matter concerning said Walker, and that
the defendant was liable on the indictment, whether the mat-
ter were true or false. The defendant attempted to show
that he fairly intended the publication as a petition for the
removal of said Walker—that it was circulated for the pur-
pose of obtaining signatures and influence to effect that ob-
ject—and that the allegations were true; and he contended
that a petition for the removal of an officer, got up for the
purpose of being presented to the proper body, could not be
a libel, if the charges were true; and that this was a privi-
leged publication, made upon probable cause; and if not true,
was not a libel.

The court instructed the jury that there was sufficient evidence of a publication by the defendant, and that the matter was libellous, unless the publication was justified or excused—that the questions were, whether it was printed and circulated upon a lawful occasion, so as to come within the class called privileged cases, and whether it was instituted in good faith, upon what appeared to be proper grounds, and for justifiable ends—that on the face of the paper it purported to be a petition to a body having power to act in the premises, and that a petition for the purposes set forth was a lawful proceeding; but that the form might have been adopted as a mere pretence for the purpose of circulating allegations against the prosecutor among the community, and without intending to have the matter laid before the legislature for their action, which would not be lawful, and that in such case malice was to be inferred from the act itself, and the defendant would be liable upon the indictment, it being immaterial whether the matter was true or false—that if they believed the defendant actually intended it as a petition to the legislature, and circulated it in order to procure the removal of the prosecutor, the defendant might justify the publication by showing that the allegations were true—that in such case the justification must be as broad as the charge— that if the defendant was acting upon a lawful occasion, and had proved the matter of the publication to be all substantially true, he was entitled to an acquittal, whatever might have been his motives, whether he was acting from a desire to promote the public good only, or from ill will towards the prosecutor—that if they were not satisfied that the defendant had justified, by showing the allegations true, it was competent for the defendant, if he was acting upon a lawful occasion, to excuse the publication by showing that he proceeded in good faith, with pure motives, and upon probable grounds; and if he had satisfied the jury of this, the end being justifiable, the publication was excused, and the defendant entitled to an acquittal; but that this ground of de-

fence might be rebutted by showing that the defendant was actuated by express malice or actual ill will towards the prosecutor, with a design to injure him; in which case, the matter not being true, the defendant must be held guilty.

The jury having returned a verdict of guilty, the defendant's counsel moved for a new trial, on the ground of misdirection, and further contended that an indictment for a libel could not be sustained in this state.

*Bartlett* and *Christie*, for the defendant, contended that no indictment for a libel could be maintained in this state, unless it was shown that the common law on that subject had been adopted and practised on in the courts before the Revolution, on similar grounds with those suggested by the counsel for the defendant in State vs. Rollins, 8 N. H. Rep. 550—that it must be shown that prosecutions had actually been sustained—and that the assembly, in 1701, passed a law for the punishment of lie or libel, spreading false news, &c., which was intended as a substitute for the English common law, and continued in force until a provision on the subject of libel was incorporated into the statutes of the state. They argued farther, that the charge to the jury was erroneous, because, 1, any person had a right to publish the truth of a public officer at all times. 2. In cases of probable cause, it is not necessary that the party should proceed in good faith, and from pure motives; and that in such case the defence could not be rebutted by showing that the defendant was actuated by express malice. They cited 1 *Belk. Hist. of N. H.* 178, (*Farmer's ed.* 92;) *Prov. Laws* 18; *N. H. Statutes*, (*ed.* 1797,) 277; 3 *Johns. Cases* 337, *People* vs. *Croswell;* 1 *Binney*, 601; 27 *Edinburgh Rev.*, *Art. on Libels;* *Stark. on Slander*, (*Amer. ed.*) 123.

*Gove*, attorney general, for the state, argued that the first settlers of New England brought with them the common law of the mother country. 1 *Minot's Hist. of Mas-*

sachusetts 18 ; *Prince's Chronological Annals of New England* 255 ; *Hubbard's Hist. of New England* 114 ; 2 *Mass. R.* 530, *Com'th* vs. *Knowlton* ;—and that the law of libel had been always understood to make a part of that common law here. *Thatcher's Hist. of Plymouth* 37, 90 ; *Prince's Annals* 445 ; 2 *N. H. Hist. Coll.* 43 ; 1 *N. H. Hist. Coll.* 257 ; 1 *Winthrop's Hist. of N. E. (Savage's ed.)* 170 ; 3 *Hutchinson's Hist. Mass.* 176 ; *Prov. Laws* 18 ; 7 *Dane's Abr.* 52 ; 17 *Mass. R.* 338 ; 1 *Mass. R.* 59.

An act passed, April 9, 1777, reëstablishing the general system of laws heretofore in force in this state ; and in the constitution of 1783, a clause was inserted continuing in force all the laws which had been adopted, used and approved in the province, colony or state of New Hampshire, and usually practised on in the courts of law.

In relation to the exceptions to the charge, he cited 4 *Mass. R.* 163, *Com'th* vs. *Clap* ; 3 *Chitty's Cr. Law* 867, 8 ; 2 *Wils.* 403 ; *Bac. Abr., Libel, A,* 2 ; 4 *Taunt.* 355 ; 3 *Camp.* 214 ; *Oliver's Amer. Citizen* 263, 4 ; 3 *Chitty's C. L.* 867 ; 1 *Saund.* 131, 132, *b, n, k* ; *Bull. N. P.* 9 ; *Sel. N. P.* 1035, *n,* 2 ; 7 *T. R.* 4 ; 2 *Stark. Ev.* 245 ; 3 *Bac. Abr.* 445 ; *Sel. N. P.* 929 ; *Starkie on Slander* 127 ; 2 *Wendell* 352, *Douglass* vs. *Tousey* ; 1 *Wend.* 451, *Skinner* vs. *Powers* ; 4 *Conn. R.* 17 ; 11 *Johns.* 38 ; 2 *Yeates* 243 ; 2 *Nott & McCord,* 511 ; *Hawk. P. C. b.* 1, *c.* 73, *sec.* 8 ; 3 *Pick.* 304 ; 5 *Johns.* 509 ; *Roscoe on Crim. Ev.* 539.

PARKER, J. It is not disputed, that by the common law the publication of a libel is an offence punishable by fine and imprisonment ; and we are of opinion that an indictment at common law, for a libel, may well be sustained in this state.

The reasons for the opinion that the common law, generally, so far as it is applicable to our institutions and form of government, has been adopted here, as a part of the law of this state, are given at length in *The State* vs. *Rollins,* 8

*N. H. R.* 550, in which the question was first argued, and need not now be repeated.

It certainly cannot be held, that there is any thing in the nature of our institutions, or the character of our government, which should preclude a libel from being deemed an offence, or render a proceeding by indictment an improper mode for enforcing the punishment of it. The reason given by the English jurists, that libels have a tendency to promote breaches of the peace, is as true here as in that country. The spirit of our institutions equally requires the preservation of good order ; and reputation is as dear, and should be quite as great an object of legal protection.

If it be true that some of the doctrines, originating in the Star chamber, relative to the mode of trial, have been founded in error, or influenced by reasons of state policy, and are not such as can be applied here, being at variance with the spirit of our institutions, and the sound principles which govern analogous cases, if not in truth corruptions of the common law, (3 *Johns. Cas.* 380,) this will furnish no reason to justify us in withdrawing libel from its place in the catalogue of offences at common law, or in abrogating the proceeding by indictment for its punishment.

The common law on the subject of libels has been held to be in force in Massachusetts, Connecticut, New York, and South Carolina. 4 *Mass.* 163, *Com'th* vs. *Clap ;* 3 *Pick.* 304, *Com'th* vs. *Blanding ;* 7 *Conn. Rep.* 266, *State* vs. *Avery ;* 3 *Johns. Cas.* 337, *People* vs. *Croswell ;* 2 *Kent's Com.* 16 ; 16 *American Jurist* 92, *Com'th* vs. *Whitmarsh.* And it is understood, that in *The State* vs. *Turell, S. J. Court, Rockingham, Nov. T.* 1814, which was an indictment for a libel, there was no intimation that a libel was not a crime, punishable here by indictment ; although the indictment was held bad, on demurrer, for the want of an innuendo applying the slander. If it be deemed advisable that it should be expunged from the criminal code, and held to be merely the

subject of a civil proceeding for damages, the legislature can readily make the necessary provision.

Nor can the argument that the provincial statute of 1701, for the punishment of criminal offenders, superseded the common law upon this subject, avail the defendant. That act, which provided that if any person of the age of fourteen years or upwards, should wittingly or willingly make or publish any lie or libel, tending to the defamation or damage of any particular person, or make or spread any false news or reports, with intent to abuse and deceive others, such person should, on conviction before one or more justices of the peace, be fined according to the degree of the offence, not exceeding twenty shillings for the first offence, and find sureties for his good behavior, &c., was intended for the punishment of minor offences, and probably verbal slander, by giving a jurisdiction to justices of the peace.

The same act authorised any justice to " punish the breach of the peace, in any person that shall smite or strike another, by fine to the king, not exceeding twenty shillings, or require bond for their good behavior, and to pay all just costs ;" but this could hardly have been intended to oust the jurisdiction of the common law courts, and be the only punishment in all cases of assault and battery. *N. H. Prov. Laws* 17.

Similar remarks will apply to the provisions in the statute of 1791–2, relating to lie or libel, and which remained in force until 1829. *N. H. Laws*, (*ed.* 1815,) 329 ; *ditto* (*ed.* 1830,) 146. By that statute the court, or justice, was authorised to fine the delinquent, not exceeding forty shillings, &c. The same statute enacted that any person guilty of assault and battery, should be fined not exceeding forty shillings ; but this has uniformly been held not to supersede the common law for the punishment of that offence.

All statutory provisions for the punishment of libel have been repealed, and this indictment is at common law.

We come next to the direction to the jury, that the matter, if in its nature defamatory, must have been published upon a lawful occasion, or come within the class termed privileged cases; and that if it did not, the defendant was liable to this prosecution, it being immaterial whether the allegations were true or false.

The authorities fully support this position. 4 *Mass.* 163, *Com'th* vs. *Clap*; 3 *Pick.* 312, *Com'th* vs. *Blanding*; 2 *Pick.* 117, *Clark* vs. *Binney*; 5 *C. & P.* 543, *Cockayne* vs. *Hodgkisson*; 1 *Mau. & Sel.* 280, *The King* vs. *Creevey*. And it rests upon sound and satisfactory principles. One great object of the law is to preserve the peace of the community. The publication of matter which is true, may have quite as great a tendency to excite to breaches of the peace, as if false; and although this can furnish no justification for the doctrine, that the greater the truth the greater the libel, it will serve to show that no one can justify or excuse the publication of matter tending to bring another into contempt or disgrace, without any lawful occasion for making such a publication. If crimes exist, let them be punished in the due course of law; but it is not expedient that the errors, or foibles, or even the crimes of individuals, should be made the subject of written publication, except for the purpose of answering some good end. Public proclamations for the mere purpose of gratifying a spirit of detraction, or circulating defamatory matter among the community, are neither necessary nor useful; and in most instances, where some grounds may exist in support of the allegations, they are greatly exaggerated. There can, therefore, be no good reason why the law should extend its protection to publications of such a character.

If the end to be attained is justifiable; as, if the object is the removal of an incompetent officer, or to prevent the election of an unsuitable person to office, or, generally, to give

useful information to the community, or to those who have a right and ought to know, in order that they may act upon such information, the occasion is lawful, and the party may then justify or excuse the publication.

Where, however, there is merely color of a lawful occasion, and the party, instead of acting in good faith, assumes to act for some justifiable end merely as a pretence to publish and circulate defamatory matter, or for other unlawful purpose, he is liable in the same manner as if such pretence had not been resorted to. 4 *Wend.* 114, *King* vs. *Root ;* 12 *Pick.* 165, *Bradley* vs. *Heath ;* 6 *C. & P.* 245, *Hunt* vs. *Algar ;* 5 *C. & P.* 373, *Wilson* vs. *Collins ; ante* 9, *Hill* vs. *Miles.* The reason is too obvious to need elucidation. There must be a lawful occasion to excuse the speaking of defamatory words. 3 *Wend.* 294, *Sewall* vs. *Catlin ;* 8 *Cowen* 141, *Burlingame* vs. *Burlingame.*

If it be found that the occasion was of itself a proper one in which matter of the nature set forth might be circulated, the defendant may justify the publication, by proving the truth of the matter alleged. Authorities can hardly be necessary in support of this position. Such cases have been termed privileged cases. We think the same rule applicable, in this respect, in criminal, as in civil cases. 2 *Kent's Com.* 20.

But in such case the justification must be as broad as the charge. It cannot be a sufficient justification, to show that part of the matter is true. 1 *Wend.* 451, *Skinner* ads. *Powers ;* 7 *Cowen* 634 ; 4 *Connecticut R.* 17, *Stow* vs. *Convers ;* 10 *Bingham* 519, *Roberts* vs. *Brown ;* 3 *Johns. Cas.* 198, *Riggs* vs. *Denniston ;* 11 *Johns.* 594, *Spencer* vs. *Southwick ;* 20 *Johns.* 204, *Sterling* vs. *Sherwood.*

If in such case the defendant justifies by showing the truth, his motives are not in question. If upon a lawful occasion for making a publication, he has published the truth, and no more, there is no sound principle which can make him liable, even if he was actuated by express malice. 8

*D. & E.* 297, *The King* vs. *Wright ; 7 Cowen* 613, *Root* vs. *King ; 5 Barn. & Ald.* 642, *Fairman* vs. *Ives ; 4 Wend.* 113, *King* vs. *Root ; 8 Wend.* 578, *Gilman* vs. *Lowell.* Encouragement is often held out, by law, to common informers, to prosecute, and such persons are in many instances actuated by malice, or cupidity ; but the motive is immaterial, so long as the prosecution is well grounded.

It has been said that it is lawful to publish truth from good motives, and for justifiable ends. But this rule is too narrow. If there is a lawful occasion—a legal right to make a publication—and the matter true, the end is justifiable, and that, in such case, must be sufficient.

If the defendant cannot justify, he may show matter of excuse. It is said in several of the authorities, that the defendant may justify, or excuse the publication. Upon principle, however, there is a palpable distinction between the two.

In a civil case, matter in justification should be pleaded, or notice of it given by a brief statement. *7 Wend.* 175, *Laine* vs. *Wells ; 5 C. & P.* 590, *Powell* vs. *Harper ; ditto* 543, *Cockayne* vs. *Hodgkisson.*

But matter in excuse, merely, it is apprehended, is properly given in evidence under the general issue, although it is said it may be pleaded. 12 *Pick.* 163, *Bradley* vs. *Heath ;* 2 *Pick.* 310, *Remington* vs. *Congdon & a.; 3 Pick.* 377, *Bodwell* vs. *Swan ; 15 Mass. R.* 50, *Jackson* vs. *Stetson ;* 6 *C. & P.* 497, *Warr* vs. *Jolly ; 4 Barn. & Ald.* 605, *Lewis* vs. *Walter ; 1 Saund. R.* 130, *note.*

Matter in excuse, in a prosecution for a libel, is where the defendant, upon a lawful occasion, proceeded with good motives—upon probable grounds—upon reasons which were apparently good, but upon a supposition which turns out to be unfounded. This is very different from showing the actual truth of the allegations ; and here the charge to the jury makes the motives of the defendant material. The direction is, substantially, that probable cause is not a sufficient defence,

if the defendant was actuated by bad motives. The matter principally controverted in this case, arises out of this part of the charge.

It is argued, that showing probable cause ought of itself to furnish a sufficient defence, without any enquiry into the motives of the defendant. But this argument would place probable cause and the truth upon the same ground, which we think is incorrect. Probable cause is undoubtedly a circumstance, and a strong one, to rebut any presumption of malice; as the absence of it is evidence to show malice. But malice may exist, notwithstanding there is probable cause; and if it is proved to have existed, why should probable cause alone be a complete defence for a publication not warranted by the truth, and made from actual malice, or ill will, with a design to injure?

It is urged, that this is like an action for a malicious prosecution, in which the defendant may show that he had probable cause, and that this furnishes a sufficient defence, even if he was actuated by express malice. But there is a plain distinction, and one of some importance. The policy which permits a party to assert what, upon probable grounds, he believes to be his own rights, and perhaps, also, what he believes to be the rights of the government, in the due course of justice, does not extend to other occasions, where a similar necessity does not exist. Even there, the form of a judicial proceeding must not be adopted to subserve improper purposes. *Hill* vs. *Miles.* In other cases, it is sufficient for the party to act upon probable grounds merely, where he has a good motive of some kind to influence him. There should be no impunity in such case for express malice, and an actual attempt, induced by such malice, to do an injury to another. In cases which do not come within the courts of justice, no form is required, and there is no necessity for making any allegation which has actual malice and ill will for its foundation, broader than the truth will warrant.

It seems to be going quite far enough for any useful pur-

pose, to hold that an individual may, without actual necessity, publish what is false of another, if he had probable cause for so doing, and was actuated by good motives. The authorities, it is believed, will carry us no farther. 12 *Wend.* 545, *Vanderzee* vs. *McGregor ; 3 Pick.* 379, *Bodwell* vs. *Osgood ; 2 Pick.* 310 ; 4 *Mass.* 169 ; 6 *Car. & Pay.* 497 ; 5 *ditto* 543 ; 3 *Wend.* 291, *Sewell* vs. *Catlin ;* 8 *Wend.* 579 ; 8 *Wend.* 606, *Inman* vs. *Foster ; 5 Johns. R.* 525, 6, *Thorn* vs. *Blanchard, Opinion of the Chancellor ; ditto* 35, *Lewis* vs. *Few ; 3 Johns. Cas.* 393 ; 12 *Pick.* 163 ; 1 *Barn. &* *Ald.* 232, *Hodgdon* vs. *Scarlett ;* 4 *Barn. & Ald.* 605 ; 5 *Barn. & Ald.* 642 ; 4 *Barn. & Cres.* 247, *Bromage* vs. *Prosser ;* 6 *C. & P.* 548, *Woodward* vs. *Landon ;* 1 *Esp. Rep.* 191, *Delany* vs. *Jones ;* 1 *Camp.* 267, *McDougall* vs. *Claridge ;* 2 *Starkie's Rep.* 297, *Brown* vs. *Croome ;* 4 *Barn. & Adolph.* 700, *Kelley* vs. *Partington.* If the party cannot excuse the utterance of words, where there is express malice, he cannot surely excuse the publication of a writing.

In *Lake* vs. *King*, 1 *Saund.* 131 ; 1 *Lev.* 240, it did not appear that the defendant was actuated by malice.

The statutes passed on this subject by several states do not go so far as the rule here stated, as they only authorize the defendant to show that he published the truth with good motives, and for justifiable ends.

It would be departing from all sound principle to hold, as a general rule, that one might publish falsehood from bad motives. The matter being untrue, and the motive bad, how could the end be said to be justifiable? Proposing, from malice, to cause an injury to another by what is in fact false, can hardly be justified or excused by any code of ethics, even if there was reason to believe its truth. And neither the interests of public justice, or the authorities, require us to hold such doctrine.

It would be an idle and vain attempt, to endeavor to reconcile all the discussions in the books upon the subject of libel and slander. Many of the cases which have been cited

to some of the points in this opinion, contain other princi-
ples, not in accordance with it, and which of course we can-
not be understood as adopting. But the distinctions, now
attempted to be sustained, will, perhaps, in some degree re-
concile the decisions themselves ; and they seem to furnish
sound practical rules, which, while they give no countenance
to defamation, protect all persons in publishing, upon lawful
occasions, the truth from whatever motives, and what they
have reason to believe the truth, if it is done with motives
which will bear examination. And we do not think that the
interests of the community, or the principles of our institu-
tions, require that the truth should be either justification
or excuse, where the allegation has been made without any
necessity or any fair occasion for it—made in the spirit of de-
traction, and not to subserve any justifiable purpose ; or that
any one should be permitted, upon any occasion, to publish
falsehood from actual malice.

The objections of the defendant must, therefore, be over-
ruled.