## DUNBAR *vs.* MARDEN.

The general rule is, that the best evidence must be produced which the nature of the case can admit, and which is in the power of the party.

When a note is attested by a subscribing witness, and such witness resides in another of the United States, and beyond the reach of the process of the court at the time of the trial, evidence of the hand writing of the witness, and of the maker of the note, may be produced, and is competent proof of its execution.

In such case, the fact that the place of residence of the witness is known at the time, can make no difference.

A note, given for a patent right for an invention neither new nor useful, is without sufficient consideration to sustain it, and is void.

Where the invention claimed and patented consisted in the application of spiral springs to the churn dash, in such a manner that it might be operated by a person's foot; it was *held,* that evidence that spiral springs were not a modern invention did not show that the invention was not new.

An invention, in order to be " useful," within the meaning of the statute of the United States on the subject of patents, is not required to be of such general utility as to supersede, or be useful beyond all other inventions in practice, to accomplish the same purpose, but it is sufficient that it may be applied to practical purposes with some degree of beneficial use; that it has no pernicious, immoral or mischievous tendency; and, so far as it is applied, is salutary.

ASSUMPSIT, upon a promissory note, dated May 13, 1835, and payable to the plaintiff, or order, in three months.

There was a subscribing witness to the note, and the plaintiff having offered evidence to show that the witness was residing out of the state, produced evidence to prove his hand writing, and that of the defendant.

One of the witnesses, produced to show that the subscribing witness did not reside in the state, on his cross-examination stated that he thought that the witness lived in Paris, in the state of Maine. The counsel for the defendant objected, that as the place of residence of the subscribing witness was known, he ought to be introduced; but the court overruled the objection.

It appeared in evidence, that the note was given for a patent right for an improvement in a churning machine, by the application of spiral springs to the churn dash, in such a way as that it might be operated by a person's foot; and a wit-

ness for the defendant testified that he had purchased one of these machines, and that it was useless, and an imposition on the public. Another witness testified that he was conversant with machinery ; that spiral springs were not a modern invention ; that a churn dash might be raised, and operated in that way ; but whether much would be gained by it, he could not say. He thought it might be more fatiguing than the old mode ; but he had known an elastic pole, fixed to the side of a building, used for the same purpose, and it was useful.

On the part of the plaintiff, evidence was introduced that the machine had been used in Oxford and Lincoln counties, in Maine, and approved by several individuals; and that the defendant, on being applied to for payment of the note, said that the sale had amounted to about forty dollars ; that he did not get more than enough to pay his expenses ; that he was poor and could not pay ; but would pay when he could.

A verdict was taken, by consent, and judgment is to be rendered thereon, or the verdict set aside and judgment entered for the defendant, according to the opinion of this court upon the foregoing case.

*Hackett*, for the plaintiff.

*Claggett*, for the defendant, to the point that the evidence introduced to prove the execution of the note was incompetent for that purpose, cited *Farnsworth* vs. *Briggs*, 6 *N. H. Rep.* 561 ; *Webster* vs. *Quimby*, 8 *Ditto* 382 ; 2 *Term R.* 773. And he contended that the witness, being within the United States, it was the duty of the plaintiff to produce him, to prove the execution of the note.

He contended, farther, that the machine was neither a new nor useful invention, and that the note was void for that cause. On this point he cited *Bliss* vs. *Negus*, 8 *Mass. Rep.* 46 ; *Dickinson* vs. *Hall*, 14 *Pick.* 217.

Dunbar v. Marden.

WOODS, J. It is made a question in this case whether the evidence offered and admitted at the trial, was competent to prove the execution of the note in question.

The general rule is, that the best evidence must be produced which the nature of the case can admit, and which is in the power of the party. In consequence of that rule, the testimony of the subscribing witness must be had, if he can be produced and he be capable of examination. But if the testimony of the subscribing witness cannot be had, the next best evidence is proof of his hand writing, and is admissible. Was the evidence offered in this case of the character required by that rule ?

It is insisted, in argument, that *Farnsworth* vs. *Briggs*, 6 *N. H. R.* 561, and *Webster* vs. *Quimby*, 8 *Ditto* 382, are authorities that the mere fact that the subscribing witness was without the limits of the state, was not sufficient to entitle the plaintiff to introduce evidence of the hand writing of the witness, and of the subscriber ; that in order to let in such evidence, the witness must be shown to be without the limits of the United States. In Farnsworth *vs.* Briggs the witness was out of this state, and that is all that the case finds. But he was, in fact, at the time in the state of Maine. Such was the proof at the trial of the cause ; and in delivering his opinion, Richardson, C. J., in reference to the facts reported in that case, says, that when there are subscribing witnesses to an instrument, they must be called to prove it. " But if the subscribing witness *cannot be produced,* the invariable practice has been, in this state and in other places, to prove the hand writing of the witness." And in the same case, Parker, J., says, " the rule, that when the testimony of the subscribing witness *cannot be had,* the proper proof of the execution is by giving evidence of his hand writing, seems to have been repeatedly sanctioned." By the language thus used, and in reference to the facts of that case, if the point can be regarded as being raised and considered at all, it clearly appears that it was then considered that " the witness

cannot be produced" and "cannot be had," within the meaning of the rule admitting proof of the hand writing of the subscribing witness in such cases, when the witness is out of the limits of the state. If that case can be considered as an authority upon the question at all, it certainly, at all events, does not sustain the defendant's views. However, the point of the decision in that case was, that when the subscribing witness is out of the state, proof of the signature of the subscriber of a note is not competent proof of its execution, without proof also of the signature of the witness. And the case of Webster *vs.* Quimby, cited at the argument, only recognizes the well settled doctrine, that when the execution of an instrument is witnessed, and the witness is not produced, and his absence is not accounted for, other proof of the execution of the instrument is inadmissible.

And it may safely be said, we think, that the doctrine of neither of those cases militates with the ruling of the judge at the trial. And, indeed, it is conceived that the reason which lies at the foundation of the well established rule of evidence, which admits of the introduction of evidence of the hand writing of the subscribing witness, and of the subscriber, in proof of the execution of an instrument, where there is a subscribing witness who is in a foreign country, applies with equal force in the case of the absence of the witness in another of the states of this Union. That reason is, that the process of the court cannot reach the witness effectively, in a foreign government or country, and, consequently, it is not in the power of the party, legally speaking, to produce him. And the process of a court of this state is no more operative upon a witness, being or sojourning in the state of Maine, to compel his attendance as a witness, than if the witness were a resident in Canada, or in China.

And he can no more be produced, or be had at court, within the sense of the rule of law dispensing with his production, and admitting other evidence when the witness cannot be produced, in the one case than in the other. And it is

believed to be the well established general rule of law on this subject, that proof of the hand writing of the witness may be given, in all cases, when from physical or legal causes it is not in the power of the party to produce the witness at the trial.

And, moreover, we believe it is also well settled, that when the witness is without the jurisdiction of the court, so as not to be answerable to its process, that fact constitutes the case of a legal inability, within the principle of the general rule on the subject, and excuses from the necessity of the production of the witness himself, and lets in the secondary evidence of his hand writing. In the case of *Homer* vs. *Wallis*, 11 *Mass. R.* 309, the precise point under consideration was decided. The subscribing witness to a note was absent, in the state of New-York, and his place of residence specified and known. To prove the execution of the note, the hand writing of the subscriber was permitted to be proved. It was objected, that the witness should have been produced. Parker, C. J., who delivered the opinion of the court, said, "it appearing, from the report of the case, that this person was absent, and out of the commonwealth, we think it was right to suffer the cause to be tried upon other evidence."

In *Cook* vs. *Husted*, 12 *Johns. R.* 188, it was held, that when, upon a trial in a justice's court, it appeared that the subscribing witness to a bill of sale resided neither in the county in which the case was tried, nor in the adjoining counties, it was sufficient, in proof of the execution of the bill, to prove the hand writing of the subscriber. The evidence was holden to be competent, for the reason of "the absence of the witness beyond the control of a subpœna from the justice." In that case, the residence of the witness was known.

In *Adam* vs. *Kerr*, 1 *B. & P.* 360, Buller, J., stated the rule to be, that when the subscribing witness is beyond the reach of the process of the court at the time of the trial, the evidence of his hand writing should be admitted.

So in *Prince* vs. *Blackburn*, 2 *East* 250, the court said, " as the witness was out of the jurisdiction of the court, so as not to be answerable to its process, the secondary evidence was properly admitted."

So, also, the rule admitting evidence of the hand writing of a subscribing witness, where the witness resides beyond the jurisdiction of the court, was recognized and applied in the case of *Hodnett* vs. *Forman*, 1 *Stark. N. P. C.* 72. See, also, *Ward* vs. *Wills*, 1 *Taunt.* 161.

Mr. Justice Park is reported to have said, in delivering the judgment of the court upon a question of this sort : " Formerly, proof of the hand writing of an attesting witness was only admissible when such witness was dead ; and I can remember the first deviation from that rule, when it was extended to cases where the party was abroad, or out of the jurisdiction of the court of this country." *Pytt* vs. *Griffith*, 6 *J. B. Moore* 538.

We are clearly of the opinion that the fact that the place of residence, or sojourn, of the subscribing witness, is known to the party, is wholly immaterial, provided it be beyond the jurisdiction of the court. We believe no case has turned upon any such distinction. The authorities bearing more or less directly upon the matter under consideration, are pretty numerous. 1 *Phil. Ev.* 473, 2d *Ed.*, by *Cowen & Hill; 4 Johns. R.* 461, *Sluby* vs. *Champlin; Holmes* vs. *Pontin, Peake's Ca.* 99 ; *Cooper* vs. *Marsden*, 1 *Esp.* 1 ; *Burt* vs. *Walker*, 4 *B. & A.* 697 ; *Dudley* vs. *Sumner*, 5 *Mass. R.* 462 ; *Cook* vs. *Woodrow*, 5 *Cranch* 13 ; *Livingston* vs. *Burton*, 11 *Johns. R.* 64; *Wallis* vs. *Delancy*, 7 *T. R.* 266, *n ; Whittemore* vs. *Brooks*, 1 *Greenl. R.* 57, *and note.*

We hold, therefore, that as the witness, residing in another state, was without the jurisdiction of the court at the time of the trial, and beyond the reach of its process, so that he could not be produced, his non-production is well accounted for, and that the execution of the note by the defendant was proved by competent evidence.

But it is farther contended, that the note was given for a patent right for a machine which was neither new nor useful, and that for these reasons the note is without consideration, and void. And if the facts reported in the case shew the patent right to be for a machine of the character contended for by the defendant, the note is clearly without any sufficient consideration to sustain the promise, and the action must fail. *Langdon* vs. *DeGroot & a.*, *Paine's C. C. R.* 203 ; *Dickinson* vs. *Hall*, 14 *Pick.* 217 ; *Earl* vs. *Page*, 6 *N. H. R.* 477. Does it appear that the improvement claimed, and for which the patent right was granted, was not new ? It appears by the case that it consisted in the application of spiral springs to the churn dash, in such a manner that it might be operated by a person's foot. The evidence offered by the defendant, to show that the improvement thus claimed was not new, was the testimony of a witness who testified that spiral springs were not a modern invention.

But the case does not find that the note was given for a patent right for an improvement in, or for the invention of spiral springs, but for the application of such springs to operate a churn dash by the aid of the foot. And the evidence falls far short of proving that the application thus claimed is not of modern invention—is not a new invention.

For aught that appears in the proof offered, the right claimed, for which the note was given, was a new application of a known mechanical force, or power, with the view of facilitating the business of one of the branches of industrial employment. That such an application of a mechanical force, to such a purpose, is the subject of a patent right, and that in the present case no proof exists that the invention is not new, can admit of no doubt. *Whittemore* vs. *Cutter*, 1 *Gallis. C. C. R.* 478 ; *Evans* vs. *Eaton*, 1 *Peters' C. C. R.* 322 ; *Holden* vs. *Curtis*, 2 *N. H. R.* 61. The objection, then, that the invention is not new, cannot prevail.

It is farther argued, that although the invention may be determined to be new, yet that it is not useful, and so not the subject of a patent.

In order to determine the force of this objection, it is necessary to ascertain what is meant by the term " useful," as used in the patent law under which the right was granted, requiring the invention to be useful in order that the patent right shall be valid.

In *Lowell* vs. *Lewis*, 1 *Mason's R.* 184, it is said, that " all that the law requires is, that the invention should not be frivolous, or injurious to the well being, good policy, or sound morals of society, and that it should not be of a mischievous tendency. The word ' useful' is incorporated into the act, in contradistinction to *mischievous* or *immoral*. For instance : A new invention to poison people, or to promote debauchery, or to facilitate private assassination, is not a patentable invention. But if the inventor steers wide of these objections, whether it be more or less useful is a circumstance very material to the interest of the patentee, but of no importance to the public."

And in *Bedford* vs. *Hunt & al.* 1 *Mason* 302, in giving a construction to the term " useful," as used in the patent act, Mr. Justice Story says : " By useful invention, in the statute, is meant such a one as may be applied to some beneficial use in society, in contradistinction to an invention which is injurious to the morals, the health, or the good order of society. It is not necessary to establish that the invention is of such general utility as to supersede all other inventions now in practice to accomplish the same purpose. It is sufficient that it has no obnoxious or mischievous tendency ; that it may be applied to practical uses ; and that, so far as it is applied, it is salutary.

" The law does not look to the degree of utility ; it merely requires that it shall be capable of use, and that the use is such as sound morals and policy do not discountenance or prohibit."

In *Kneass* vs. *The Schuylkill Bank*, 4 *Wash. C. C. R.* 9, Mr. Justice Washington, in commenting upon the meaning of the word " useful," as used in the statute, fully recogni-

zes and adopts the construction given it by Mr. Justice Story, in the case of Lowell *vs.* Lewis.

In *Dickinson* vs. *Hall*, 14 *Pick.* 217, it was decided that an invention, in order to be useful, must be capable of some beneficial use, in contradistinction to pernicious, or frivolous, or worthless.

And Chancellor Kent, in the second volume of his *Commentaries, p.* 369, *4th ed.*, lays down the law, that in order to be useful, the invention must to a certain degree be beneficial to the community, and not injurious, or merely frivolous.

The question is not, then, whether the invention was useful beyond all other machines in use for effecting the object for which it was designed ; but is, whether it is capable in some degree of beneficial use, or would in some degree subserve the purpose of its design ; or whether, on the contrary, it was merely mischievous and injurious, or pernicious, or frivolous and worthless.

One witness on behalf of the defendant stated that he purchased a machine ; that it was useless, and an imposition upon the public. But it does not appear, however, from his testimony, how he arrived at that result ; whether from mere examination of the machine, or from the application of it to the use for which it was designed. It does not appear that he was himself a machinist, and an expert in the matter of machinery, nor that he ever saw the machine attempted to be operated. And it is apparent that without skill shown, or actual experiment made, his testimony furnishes no sufficient ground on which safely to arrive at the conclusion that the machine was merely mischievous, and in no degree useful ; or that it was not capable of use in some degree, for the purpose designed. *Case* vs. *Morey*, 1 *N. H. R.* 347.

But it does appear, from the testimony of another witness on the part of the defendant, who is skilled in machinery, that a churn dash might be operated by spiral springs, as applied in this case ; but he could not say whether much

would be gained by it or not. No inference certainly can be made from this evidence, that the machine is at all injurious, or pernicious in its tendency, or is not useful, within the rule of law found in the books on this subject. So far from it, his opinion, based on his skill, is, that it might be used and operated in the manner claimed for its application and use, and that to some advantage, with some gain. And by the testimony of a witness on the part of the plaintiff, it appears that the machine had been in actual use in two counties in the state of Maine, and its use had been approved by several individuals. Those facts furnish plenary evidence of the usefulness of the machine, within the rule on that subject. The fact cannot be inferred that the machine was merely mischievous, or incapable of any use, while at the same time it was used, and approved by those using it. And indeed we find no evidence in the report of the case, from which the inference can be legally and fairly made that the invention in question is in no degree beneficial to the community; that it is of no practical utility, nor capable of use for the purpose intended; nor that it is frivolous merely, or its use is either mischievous, pernicious, or immoral in its tendency. And the degree of its utility is clearly not material. In no point of view, therefore, can the invention be considered as not useful.

We regard the invention, therefore, for which the patent right was granted, and which formed the consideration of the note in question, as being both new and useful, within the rules of law upon this subject.

The grounds of exception, therefore, to the ruling of the court below, fail altogether, and the plaintiff is entitled to

*Judgment on the verdict.*