# STRAFFORD,

## DECEMBER TERM, A. D., 1851.

### LORD v. STAPLES.

Where the land of a surety has been levied upon to satisfy the debt of his principal, he may maintain an action against the principal for money paid.

A volume of the laws of another State, purporting to be published by authority of the State, and proved by a counsellor in that State to be cited and received in the courts there, is competent evidence.

Whether a volume of laws merely foreign be admissible on such proof, *quære?*

A judgment was recovered in Maine against a surety upon a joint and several note made by a principal and sureties, and the execution was satisfied in part by a levy upon the land of the surety. In an action for money paid, brought by the surety against the principal, *held* that a copy of the note was competent evidence, as the original was out of the State and beyond the control of the party.

Where a surety's land has been levied upon to satisfy the debt of the principal the facts that the suit was brought at the request of the sureties, that the payee refused to accept land, but insisted on the money, and agreed to release the land on receiving payment of the debt, and that a negotiation was had between the principal and the sureties, which resulted in their giving a new note for the original debt, the title to the land still remaining in the payee, constitutes no bar to a recovery by the surety against the principal.

A judgment was recovered against a surety, one of the joint and several makers of a note, and the execution was satisfied for the sum of $330.08, by a levy on his land. He then substituted a new note for the original one, signed by himself, the other sureties and the principal the payee agreeing to release the land when the debt should be paid. He then paid $133.00 on the note, and brought a suit for money paid against the principal. *Held*, that as he had paid but one debt for the principal, he was entitled to recover only the sum of $330.08.

ASSUMPSIT, for money paid and for money had and received. The plaintiff filed a specification, in which he claimed $330.08,

paid by the plaintiff, as surety for the defendant, in part satisfaction of an execution in favor of the Savings Bank of Strafford county, dated June 2d, 1849, issued on a judgment recovered by said bank, against Lord, for $593.25 debt, and $11.21 cost, before the district court, &c., held at Alfred, York co., Me., 'May, 1849, which judgment is founded on a note for $500, dated April 28, 1846, payable to said bank or order, in six months, and signed by the defendant who was principal, and by the plaintiff and others as sureties.

Also, for $73 paid by the plaintiff as surety for the defendant, to said bank, August 22d, 1849, in part payment of·a debt due the bank from the defendant.

Also for $60 paid by the plaintiff as surety for the defendant, to the bank, August 29, 1849, in part payment of a debt due the bank from the defendant.

Also interest on all said sums from the dates of the payments.

The defendant objected to the specification as insufficient.

The plaintiff produced a copy of a judgment as described in his specification, duly authenticated.

The declaration in the action was upon a note dated April 28, 1846, by which Lord promised to pay the Savings Bank or order $500 in six months. He also produced a copy of an execution, issued on said judgment, dated June 2, 1849, with a copy of a return of a levy of the same on the plaintiff's real estate in York county, which was appraised at $330.08, and set off in part satisfaction of the execution.

To prove the regularity of the levy under the laws of Maine, the printed volume of the laws of that State, purporting to be published by authority of the State, and proved by a counsellor of the courts of Maine, to be the laws of that State, as constantly cited and received in the courts of that State, was offered, objected to, and admitted in evidence.

The defendant objected to the evidence relating ·to the'levy, as insufficient to support either of the counts of the plaintiff's declaration.

The plaintiff offered the deposition of J. McCrillis, who was a co-signer with the plaintiff, of the note to the bank. The defendant objected to his admission on the ground of interest.

The plaintiff then proved the execution and delivery of a release from himself to the witness, before he gave his deposition, " from all liability for any money paid by the plaintiff" on this note, describing it, " and from all contribution."

The defendant objected that this release was insufficient to render the witness competent, but he was admitted.

He testified that he signed a note for Staples, which, at the time of giving his deposition, he saw attached to a writ in the clerk's office, at Alfred ; of which he gave a copy, as follows :

" *Lebanon, April* 28, 1846.

$500. For value received, we jointly and severally promise to pay to the Savings Bank for the county of Strafford, or order, five hundred dollars in six months ; the signers all holden, notwithstanding bank may agree with promissors a further time for payment of said sum of money or any part thereof.

ALPHEUS STAPLES,
BENJAMIN LORD, Jr.,
JAMES McCRILLIS,
WILLIAM GERRISH."

He testified that Increase S. Kimball's name was on the back of the note, with some writing which he could not read.

The defendant objected to the admission of secondary evidence of this note, and that this partial copy was not admissible, but it was received.

McCrillis testified that he signed this note at the request and for the accommodation of the defendant. When it was brought to him it was signed by the defendant and the plaintiff, and the defendant said Mr. Gerrish would sign it.

It appeared by the copy of the note, certified by the clerk of the court in Maine, accompanying the copy of the record, that the indorsement on the note was, " I guaranty the payment of the within note, Increase S. Kimball."

It appeared that said William Gerrish had been sued and judgment and execution obtained against him upon this $500 note, and a levy made on his real estate for the balance of the debt. The treasurer of the Savings Bank testified that a note was discounted for Staples, signed by him, Lord, McCrillis and

others, and guaranteed by I. S. Kimball, for $500. He also verified two receipts, given by him to the plaintiff, one for $73 dated August 22d, 1849, the other for $60, dated August 29th, 1849, which he testified were for money paid by the plaintiff upon Staples' debt, which was the only debt of Lord to the bank.

The defendant denied that the levies were made by the authority of the bank, or that they had made themselves parties to any levy upon the plaintiff's or Gerrish's property, and contended that the levies were made for the accommodation of the sureties, and under their direction, upon their furnishing the bank a new note signed by the original parties and by new sureties to their satisfaction.

For the purpose of showing this, they introduced two letters, one from I. S. Kimball, the guarantor, to A. S. Freeman, the solicitor of the bank, and the reply of Freeman to Kimball, copies of which were annexed, and made part of the case. To the introduction of these letters the plaintiff objected, but in connection with Mr. Freeman's testimony, they were admitted.

Kimball's letter was dated on the 16th of June, 1849, and stated that he had called on the clerk of the court for the execution against Lord, and learned that it had been forwarded to Freeman by mail; that Lord had been to see him, and said that he would obtain a note satisfactory to the bank. He also desired Freeman to inform him if Lord had not procured such a note, and to send him the execution.

Freeman's answer to this letter was dated on the 18th of June, and in it he acknowledged the receipt of Kimball's letter, and said he was much surprised that the execution should have been sent him. He stated that he left the suit against Lord in Kimball's charge at his request, and to enable him to secure himself from loss as surety on the note; that the suit against Lord was brought at the request of some of the other parties to the note, and, as he thought, with directions to consult Kimball with regard to the service of the writ; that the treasurer of the Savings Bank showed him Kimball's letter in answer to one from the treasurer, inquiring respecting the state of this claim,

in which Kimball stated some things which did not accord with Freeman's recollection, and specified as one of those things, what Kimball had said about the Staples note, and that Kimball had said that he had never seen it, and that Freeman had said that Gerrish and Lord had signed the note; that Freeman did not remember that there was any question as to who were parties to this note. Freeman also specified, as another of the things referred to, that Kimball had stated that Freeman wished him to take charge of the suit. Freeman admits in his letter that he had put the business in Kimball's hands, but alleges that it was by Kimball's request, and on his assurance that it should be closed before October, and that he then expressly told Kimball that the Savings Bank would be no party to a levy on real estate any farther than might be necessary to secure Kimball or the other sureties on the note; that he enclosed the execution in order that Kimball might avail himself of any advantage it might give him in securing the debt against Lord or the other signers, but with the express understanding that the plaintiffs were not to pay any costs nor to take the land levied on in satisfaction of their debt, but only to hold it for the benefit of the sureties who might have to pay the debt.

Mr. Freeman was called by the plaintiff, and being examined by the defendant, testified that he knew of no other instructions being given to I. S. Kimball than those contained in his letter; he gave no other. Objection was made to any inquiry relative to Kimball's authority, but it was overruled by the court.

This witness testified that a new note was offered to the Savings Bank, dated June 6th, 1849, for $600, payable in sixty days, and signed by A. Staples, B. Lord, Jr., W. H. Gerrish, David Pray, and also by "Nath'l Lord, surety for above."

The note was sent to pay the $500 note. Kimball's name was not on the face of it, but a limited guaranty was signed by him on the back. The bank declined to receive it, but consented, if Kimball would sign it on its face. It was sent to him and he returned it, signed thus: "I. S. Kimball, surety for above, including N. Lord."

The plaintiff made the two payments of $73 and $60 after

this note was given to the bank, and since, this suit was commenced has paid $1.90 more, for which receipts were given him not indorsed on the note.

The bank agreed to release all their interest in the land levied upon, when the debt should be paid; and the plaintiff caused a quitclaim deed to be prepared of all his own and Gerrish's real estate, levied upon as stated, and left it in the Bank to be executed, when the payment should be completed. There was evidence that the plaintiff had agreed to convey the land of Gerrish, which had been levied upon, to a third person, for $270, when he should get a deed.

A verdict was taken by consent for the plaintiff, for the amount of the sums claimed and interest; subject to the opinion of the superior court; the verdict to be set aside, if either of said sums should not be allowed.

*Christie*, for the defendant.

1. The specification as to the $73, and the $60, is insufficient, because it does not show upon what claim or debt of the bank, against Staples, these payments were made.

2. As to the admission in evidence, of the printed volume of the laws of Maine, the authorities seem conflicting and contradictory; many of them will be found collected and commented upon in 3 Phillips Ev., (Cow. and Hill's Ed.,) 1136 to 1145, note 776 — and in 1 Greenl. Ev., §§ 488, 489, and notes. We are not aware that evidence of this kind has ever been held admissible in this State; and have the impression that it has been held otherwise.

3. It will not, we presume, be contended that a levy upon the land of a surety in satisfaction of a judgment against him *alone*, for the debt of the principal, entitles the surety to maintain an action against the principal for *money had and received to his use*. But we submit that such a state of facts does not authorize the surety to maintain an action against the principal for *money paid*. The reason is, that the surety has not *paid any money;* whatever payment he has thus made, has been by a statute sale and conveyance of the sureties' lands to the use of

the principal. This can only entitle the surety to maintain an action for *land sold and conveyed* to the defendant's use, at his request, &c., or on some special declaration.

To sustain the common count for *money paid* by the plaintiff for the defendant's use, it is essential to show that the plaintiff has *paid money* for the defendant. 10 B. & C., 346 ; 3 East, 159 ; 11 East, 54 ; 3 Bibb, 378 ; 7 S. & R., 246 ; 14 S. & R., 179 ; 17 S. & R., 94 ; 2 B. & Ald., 51 ; 6 B. &. C., 499 ; 1 Chit. Pl., 350 ; 1 Steph. N. P., 317, *et seq.*; 7 J. J. Marsh, 18 ; 10 S. & R., 75 ; 1 U. S. Dig., 282, § 345.

4. The original note, alleged to have been signed by the parties and others, should have been produced. The evidence of its existence, without its production, or without showing its loss, or some other sufficient reason for its non-production, was not admissible ; and this on the common and familiar principle that the existence, as well as the contents, of a written instrument, must be shown by its production, unless a reason for its non-production is first shown. The record in York county is not evidence against Staples. He was not a party to that judgment ; and the clerk's copy of a note or of any other paper in that case, is not evidence against him, till it is shown at least, that the note on which that judgment was rendered, was signed by him ; and that is not shown in this case, even if the evidence is admitted. McCrillis testifies that at the time of giving his deposition he saw a note signed by the defendant and himself, attached to a writ in the clerk's office at Alfred. He does not say to what writ it was attached, nor does it in any way appear that this was the note on which the judgment against the plaintiff was rendered.

5. The debt of $500, and interest thereon, was the only debt the bank had against Staples or the plaintiff. The $600 note was given to pay this debt, or as a new security for the same. The bank, Staples, and the plaintiff, all so understood and intended it, and they were all parties to the new note, and it was, and could have been given for no other purpose. The levies were made under Kimball's and the sureties directions, and to protect his and their interests. The bank refused to be

a party to, or to have a levy made on their account; but insisted upon having a new note for the debt, and in that case agreed to release to the plaintiff the levy or levies. " This all fully appears from the report of the case. This being so, the plaintiff can, at most, only recover against the defendant for what he, the plaintiff, had paid in money towards the debt, before the commencement of his action, to wit: the $73, and the $60. He cannot recover the $330.08, the sum at which his land was set off; because it was not set off for, or on account of, the bank, nor was it ever understood or intended that the bank was to take it in payment of their debt, and they never have done it.

At all events, as there was in fact *but one debt*, if that was paid by the levies, then this is all that the sureties, (the plaintiff and others,) have paid for the defendant; and the plaintiff can in this view, at most, only recover what was paid by his land on the execution.

*Wells*, and *Jordan*, for the plaintiff.

The volume proved to be the laws of Maine is the best evidence of the law of Maine. It might have been proved by parol. *Frith* v. *Sprague*, 14 Mass., 455. A printed volume of the laws of a British province, proved by witnesses to have received the sanction of the executive and judicial officers of the province, as containing its laws, is admissible in evidence in a case where the title to land situated within the province is in question. *Owen* v. *Boyle*, 15 Maine, 147; *State* v. *Carr*, 5 N. H. Rep., 367. The printed volume itself of the laws is *primâ facié* evidence. Greenl. Ev., § § 489, 490, and notes.

It is immaterial in what the surety makes the payment, whether in land, money, goods or securities. If the creditor has been satisfied, the right of the surety is complete. The manner in which the surety has settled the account does not concern the principal. Burge on Suretyship, 358; 4 Pick., 71; 19 Pick., 55; 7 Pick., 133; 17 Mass., 560; 2 Met., 561.

Where the surety has paid the debt by conveying land, which is accepted in satisfaction, he may sue the principal for indemnity in the form of assumpsit for money paid. *Bonney* v. *Seely*,

2 W.end., 481; *Rundell* v. *Rich,* 11 Mass., 498; *Ainslee* y. *Wilson,* 7 Cowen, 662.

GILCHRIST, J. In this case it appears that in the month of April, 1846, the plaintiff signed a note for the sum of $500, as co-surety for the defendant, with McCrillis and Gerrish, payable to the Savings Bank in six months. At the May term, 1849, of the district court for the county of York in Maine, the bank recovered judgment on the note, against the plaintiff. An execution was issued on the judgment and levied upon the plaintiff's real estate in the county of York, which was appraised at the sum of $330.08, and set off in part satisfaction of the execution. The present action is for money had and received and for money paid, and the defendant contends that as the plaintiff has discharged the defendant's debt with his land, and not with money, he cannot recover in this form of action.

Where sureties satisfied the debt of their principal by giving their note to the creditor, who accepted it in discharge of the original contract, it has been decided in this State to be as much a payment, in respect to the principal, as if the money had been actually advanced. *Pearson* v. *Parker,* 3 N. H. Rep., 366. It is said by the court (*Harris, J.,*) to be "immaterial to the defendant in what way the plaintiffs satisfied the debt, provided he were relieved from his liability." In the case of *Randall* v. *Rich,* 11 Mass., 494, a negotiable promissory note was indorsed to a lessor, as collateral security for the rent of the premises leased, and he sued the promiser in his own name, and caused the execution to be levied on the debtor's land. It was held that the debtor might recover in an action for money had and received the balance of the note, after deducting the rent in arrear. The satisfaction of the execution, it was said, ought to be considered as a payment of the money, and although land was taken, it was taken at money's worth, and the debt which might have been exacted in money at all events, had been discharged. Although it is said it must appear that money has actually been advanced, the expression is to be understood that nothing short of actual payment will support the count. It has

been often held that where the original liability has been extinguished by actual payment, it is immaterial in what description of property the payment has been made. Where provincial notes have been received as money, they may be recovered in this form of action. *Pickard* v. *Bankes*, 13 East, 20. So may a bill of exchange. *Wilkinson* v. *Clay*, 6 Taunton, 110 In *Ainslie* v. *Wilson*, 7 Cowen, 662, the plaintiff was liable as indorser for the defendant, and conveyed land which was received as payment of the note. In was held that this was not a voluntary payment, for the plaintiff was liable to be sued by the holder of the notes. *Woodworth*, J., said, "I have no doubt that as the conveyaace of the land was received in discharge of a money debt due from the plaintiff, it is in judgment of law to be considered the same thing as if the plaintiff had actually paid money." And in *Bonney* v. *Seely*, 2 Wend., 481, it was decided that the payment of the debt of the defendants in land was sufficient to sustain the action for money paid by the surety. A tent in common who sells trees growing on the land and receives real estate in payment, is liable to his co-tenant in an action for money had and received. *Mller* v. *Miller*, 7 Pick., 133 ; *Emerson* v. *Baylies*, 19 Pick., 55.

The general rule is often stated to be that to maintain the count for money paid, there must be an actual payment of mon, ey.

But this rule has been so far departed from, in many cases and particularly in the case of a surety, that wherever the property of the surety has been applied and received in payment of the debt of the principal, the value of it may be recovered under the count for money paid. This class of cases includes the present, and our opinion is that the appraised value of the plaintiff's land, set off upon the executiou may be recovered under this count. In *Power* v. *Butcher*, 10 B. & C., 346. Mr. Justice *Pvrke* says, "The count for money paid cannot be maintaining without proving actual payment, or that which was equivalent to payment," and the transaction had the same effect upon the interests of the defendant, and was as injurious to the plaintiff as the actual payment of money.

Lord v. Staples.

It is objected that the printed volume of the laws of Maine is not competent evidence to prove the regularity of the levy according to the laws of Maine. In the case of the *State* v. *Carr*, 5 N. H. Rep., 370, it is said that " the seal of the State is of itself the highest test of authenticity. But other modes of proof are not excluded on this ground. And it seems that the acts of States may be proved otherwise than by a copy under the seal of the State." In *Thompson* v. *Musser*, 1 Dall., 458, a printed pamphlet, purporting to be the laws of Virginia, and to be printed by the State printers, was held to be competent evidence of the law of that State. It was said by *McKean*, C. J., that " such printed copies being of public notoriety, and relied on as genuine, have the presumption of authenticity in their favor and afford a reasonable satisfaction to the mind, of their truth and accuracy." Where books purported to contain the laws of the province of New-Brunswick, and there was evidence that they had been cited and read in the courts there, as laws in force, and as regulating the administration of justice, they were held to be competent evidence ; *Shepley*, J., saying, " it is difficult to say that it is not as satisfactory to the mind as the exemplification of a roll found in the possession of the *custos rotulorum*, would be, accompanied by the oath of the person making it." This decision goes farther than it is necessary for us to go in the present case, for it holds that a volume containing the laws of a foreign country, and authenticated by parol evidence only, was admissible in evidence.

In the case of *Raynham* v. *Canton*, 3 Pick., 293, it was held that a volume purporting on its face to contain the laws of a sister State, was admissible as *primâ facié* evidence to prove the laws of that State. It is said by *Parker*, C. J., " in England it does not seem to be settled that printed books of foreign laws are to be received in evidence, and we do not mean to decide that the law of any country merely foreign may be so proved. But the connexion, intercourse and constitutional ties which bind together these several States require that this species of evidence should be sufficient until contradicted." But in the case of *Lacon* v. *Higgins*, 3 Stark., 178 ; 1 Dowl. & Ry., 38, Lord

*Tenterden* admitted a copy of " Les Cinq Codes" of France, purporting to be published by authority of the government of France, and said by the French vice consul to be the book on which he acted in his official capacity. In *Middleton* v. *Janverin*, 2 Hagg. Cons. Rep., 437, a marriage was solemnized at a town in the Austrian Low Countries, the law of marriage there being regulated by the decree of the council of Trent, made in the year 1563. To prove that this was the law of the United Provinces to which the town was subject, the testimony was introduced of four advocates of the court of judicature at the Hague and of four advocates of the courts in Austrian Flanders. Sir *W. Wynne* said " the decrees of the Council of Trent are in print and in every body's hands ; and the particular parts of the laws which are referred to by the advocates, are copied into their opinions therefore I think there is every evidence of authentication and every ground the court can have to believe that such ordinances and such laws as they mention, were actually, by proper authority, published and were at the time in question valid and in force."

This question was much discussed in the *Baron de Bodes Case*, 8 Ad. & E. (N. S.,) 246. A French advocate stated that the feudal law had been put an end to in Alsace by the torrent of the French revolution, *de facto*, in 1789, and by the treaty of Luneville, *de jure ;* and upon being asked whether there was not a decree to that effect, said that there was such a decree, of the 4th of August, 1789, of the National Assembly ; and that he had learned this in the course of his legal studies, it being part of the history of the law which he had learned while studying the law. The decree itself was not produced. It was held by the court, *Patteson,* J., *dissentiente,* that the evidence was admissible, and the case of *Lacon* v. *Higgins,* before cited, was recognized as law ; and if the statement of the contents of the decree was competent, *a fortiori,* a copy of the decree would have been admissible. The courts in England take the same view in relation to the admissibility of a volume of foreign laws that is taken here in relation to the laws of any of the States of the Union. It is not, however, necessary in

the present case to decide that a volume of foreign laws would be admissible on such an authentication, although recent decisions tend that way. It is sufficient for this case, for us to hold that the volume of the laws of Maine was properly admitted.

As to the copy of the note, McCrillis says that he saw a note, signed by the defendant and himself, attached to a writ in the clerk's office in Alfred. He gave a copy of the note, and it appeared to be signed by the plaintiff also, and to be similar in date, amount and time of payment to the note on which judgment was rendered as above mentioned. It does not appear that there was more than one note like this, or that there was any other judgment between these parties. Now these facts leave no doubt that a note on which the plaintiff was surety for the defendant, was the foundation of the judgment on which the plaintiff's property was taken. The plaintiff could not produce the note, for it had become a part of the records of a court in another jurisdiction, and was beyond his control. Thus it has been held that an office copy of a registered deed is admissible in evidence where the grantee is out of the commonwealth, and the original deed is not under the control of the party producing the copy. *Eaton* v. *Campbell*, 7 Pick., 10. The practice was carried further in the case of *Cocks* v. *Nash*, 6 C. & P., 329, where there was a composition deed in the hands of a trustee, executed by the plaintiff, the defendant's mother, and several of the defendant's creditors, but not by the defendant, and which the defendant wished to give in evidence; but the plaintiff objecting, it was held that the trustee could not be compelled to produce it, on the ground that he held it for the plaintiff, who had an interest in it; but the defendant was permitted to give secondary evidence of its contents. In *Burnham* v. *Wood*, 8 N. H. Rep., 334, a copy of certain charges made on account against the defendant, on the books of a corporation out of the State, was admitted, on the ground that the corporation was beyond the process of the State, and that the books were not subject to the control of the witness. Where the assignee of a mortgage, residing in Boston, refused to annex it and the notes on which it was founded, to his deposition, it was

held that an office copy was admissible. *Little* v. *Paddleford,* 13 N. H. Rep., 167 ; *Woods* v. *Banks,* 14 N. H. Rep., 109. Under the circumstances we think the copy was competent evidence to show the liability of the plaintiff as surety for the defendant.

It is said that the levy was not made by the authority or for the benefit of the bank, and that, therefore, the plaintiff should not recover the appraised value of his land. But the plaintiff has lost his land and it has been applied to pay the defendant's debt. Whether the suit was commenced at the request of the sureties, or not, is immaterial. It is also unimportant whether the bank agreed to release their interest in the land levied upon, if they could receive a new note for $600. The bank, naturally enough, preferred money to land, and having the power to exact the money, were inclined to compel the parties to pay it. Whatever negotiations may have been had among the parties, the defendant has shown nothing to vary this fact, that the plaintiff's land has been taken to pay the defendant's debt. The letters prove nothing to the contrary. They show, only, that the bank did not mean to surrender any of their rights, and that the sureties desired to protect themselves against loss ; but so far as the defendant is concerned, his debt is discharged to the amount of $330.08, which sum we think the plaintiff should recover.

But the plaintiff cannot recover the two sums of $73 and $60, which he has paid upon the $600 note. That note was merely substituted for the $500 note, and was not for a new debt. The bank agreed to release their interest in the land when the debt should be paid. The execution was levied upon the plaintiff's and upon Gerrish's land, the debt then amounting to about $600, of which the plaintiff's land satisfied $330.08, and the remainder, $270, was paid by the levy on Gerrish's land. The note for $600 was for the purpose of getting a release of the land, and the sums paid by the plaintiff, being $73 and $60 = $133 before this suit was commenced and $190 since that time, amount to $323, a less sum than the value of his land. He has paid but one debt for the defendant by his land, and if he pays money to the bank for a release of that land, still he has paid but one debt for the defendant.

The verdict was taken for all the sums claimed. The plain-tiff is entitled to recover $330.08 but the case provides that the verdict is to be set aside, if either of the sums should not be allowed.

*Verdict set aside.*