CARPENTER *v.* BAILEY.          { Mar. 20, 1876.

*Action for libel—Pleading—Evidence.*

On the trial of an action for libel, it appeared that the original writing, the publication of which was the foundation of the suit, was among the records of the navy department at Washington. *Held,* that secondary evidence of its existence and contents was properly admitted.

The alleged libel contained charges against the plaintiff as paymaster in the naval service of the United States stationed at Portsmouth, and requested his removal. *Held,* that a letter from Vice-Admiral Porter, while in charge of the department, to the plaintiff, making the removal and stating the reasons for it, was admissible as an act of the department.

The plaintiff was permitted to testify that he sold his furniture at a loss, upon his transfer from the naval station at Portsmouth. *Held,* no cause for setting aside the verdict in his favor.

The allegations of a special plea of justification in such case must be proved substantially as laid. Hence, where such plea set up specific facts, going to show that the charges were true, and other facts showing that the occasion was lawful and the end justifiable, and alleged that such was the fact—*Held,* that the court properly refused to charge the jury that if the alleged charges are true the plaintiff cannot recover; also, that the jury were properly instructed, among other things, that, if the occasion was lawful and the alleged libel true, the verdict should be for the defendant.

Whether an alleged libel is a privileged communication, is a question for the jury under proper instructions from the court.

\* LADD, J., did not sit.

FROM ROCKINGHAM CIRCUIT COURT.

CASE for libel. Trial before RAND, J., and a jury, at the October term, 1874.

The declaration alleges that on April 20, 1869, the plaintiff was a paymaster in the navy, stationed as purchasing agent at Portsmouth; that by the rules of the navy department he was entitled to remain on that station three years; and that the defendant, contriving, etc., published of him the following libel:

" To the Honorable the Senators and Members of the House of Representatives in Congress from New Hampshire:

" The undersigned, after much patience has been exhausted, beg to remonstrate against the further continuance at this station of Paymaster J. N. Carpenter as purchasing agent. In all our struggles Paymaster Carpenter has always voted against us, carrying the straight democratic ticket, throwing his patronage adversely to the friends of General Grant, and always filling the requirements of a tool sent here by ex-Secretary Wells to carry out the interests of Andrew Johnson. May we hope from relief from such a burden? Let the rebel sympathizer be exchanged for a man who will have office hours of a convenient kind, and will be found there at least once a day to attend to those having business there, and citizens will alike be grateful."

" Portsmouth, N. H., April 20, 1869.

| | |
|---|---|
| " E. G. PEIRCE, JR., | E. A. STEVENS, |
| CHARLES ROBINSON, | W. H. HACKETT, |
| AARON YOUNG, | JOHN H. BAILEY, |
| DANIEL J. VAUGHAN, | PAINE DURKEE." |

The original of the supposed libel was not offered in evidence, but the plaintiff testified that he saw the original of the libel in the navy department in Washington in possession of Admiral Porter; that the paper offered was a copy of the one he saw at the department; that the name of " John H. Bailey " was on the paper he saw at the department, in the handwriting of the defendant; that the paper he saw at the department was in the same handwriting of a paper he had received in course of business from Bailey's store, which he said was in the handwriting of the defendant's clerk, and that he knew Bailey's signature, and that the name of Bailey signed to said paper was in his handwriting; that he found the same paper among the records of the department, and returned it to the clerk who had charge of it; that early last June he called at the navy department to get access to said paper, and that a thorough search was made and the paper could not be found. The plaintiff did not testify that he made any search himself, or that he had since made any further inquiry or attempt to procure the original. The defendant objected to the introduction of the copy. The copy was admitted, and the defendant excepted.

The plaintiff introduced a letter from Admiral Porter accompanying a copy of the supposed libel, and stating that the plaintiff was trans-

ferred because of the official acts complained of in said letter. The defendant objected to said letter, that it did not appear that Admiral Porter was acting for the secretary of the navy, or had any authority to write such letter. The plaintiff testified on this point, as follows : " I know David G. Porter. He was the head of the department next to the secretary of the navy. He was acting as vice-admiral in the navy. * * I went to Washington, to the navy department. I found Admiral Porter soon after, and he was in control of the department. I applied to Borie first, and he referred me to Admiral Porter as the person detailed to attend to that duty. I applied to Porter, and he put me off at the time. Again I applied, and then, with Porter's permission, I found the original, of which this was a copy. I found the paper among the records of the navy department, in its proper place." To the introduction of said letter the defendant excepted.

The plaintiff testified, subject to the defendant's exception, that he sold his furniture, upon transfer from the naval station at Portsmouth, at a loss, as bearing upon the question of damages. The defendant requested the court to instruct the jury that the supposed libel, being a petition for the removal of a public officer, is a privileged communication, and to maintain the suit the plaintiff must prove the publication to be false and malicious ; also, that the plaintiff must prove that the defendant had probable cause to believe that the publication was true ; also, that if the alleged charges in the publication are true, the plaintiff cannot recover ; also, that this being a privileged communication, the question for the jury is, whether the defendant published the supposed libel in good faith, and that if he acted in good faith the truth or falsity of the publication is of no consequence ; also, that the supposed libel, being a petition for the removal of a public officer, if made only for the purpose of being sent to the proper party to effect the object, and was so sent, is not the ground of an action for libel at all, but only for an action for a malicious prosecution. The court refused these several requests, and the defendant excepted. The plaintiff offered evidence tending to show that the defendant was actuated by private, personal, and malicious motives in publishing the alleged libel, which evidence was controverted by the defendant.

The court instructed the jury as follows : " That any publication is a libel which tends to degrade, injure, or bring a person into contempt and ridicule ; or accuses him of crime, or other act odious or disgraceful ; and that they must judge whether or not the document set forth in the writ was a libel ; that, if they found it was a libel, they must then inquire whether or not it was published upon a lawful occasion ; that if the object was the removal of an incompetent officer, or to give useful information to the community, or to those who had a right and ought to know, in order that they might act upon such information, the occasion would be lawful; that if there was merely color of lawful occasion, and the defendant, instead of acting in good faith, assumed to act for some justifiable end merely as a pretence to publish and circulate defamatory matter, he would be liable as though no such pretence existed ; that if

the occasion was lawful, the defendant might either justify or excuse; that, in order to justify, he must prove the truth of the matter alleged, and the justification must be as broad as the charge; that if the occasion was lawful, and the alleged libel true, the verdict should be for the defendant; that if the defendant could not justify, he might excuse himself by showing that the alleged libel was a privileged communication; that it would be a privileged communication if it was published upon a lawful occasion, in good faith, and with a belief, founded on reasonable grounds, of its truth; that when a person knowingly and purposely does an act injurious to another without any legal justification or excuse, he is guilty of legal malice; that in determining the defendant's motive, the jury might consider the alleged libel as a piece of evidence.

To the foregoing instruction of the court to the jury the defendant took the following exceptions: (1) That it is a question of law, and not a question of fact to be submitted to the jury, whether the publication was a libel; (2) that it is a question of law whether the publication was a privileged communication, and not a question of fact to be submitted to the jury; (3) that the court should have charged the jury that it was a privileged communication as a matter of law; (4) that it was not a question of fact to be left to the jury, whether there was lawful occasion for the publication.

The verdict was for the plaintiff, which the defendant moved to set aside for error in the foregoing rulings and charge, and the questions thereupon arising were transferred to this court for determination.

*Hatch*, for the plaintiff.

*Small, Marston,* and *Frink,* for the defendant.

LADD, J. It is a sufficient answer to the objection against admitting secondary evidence of the existence and contents of the alleged libellous writing, that the original was shown to be beyond the jurisdiction of the court. *Burnham* v. *Wood,* 8 H. H. 334; *Little* v. *Paddleford,* 13 N. H. 167; *Woods* v. *Banks,* 14 N. H. 101; *Lord* v. *Staples,* 23 N. H. 448; *Beattie* v. *Hilliard,* 55 N. H. 428.

There was evidence from which the court might well find authority on the part of Admiral Porter to write the letter which the plaintiff received, with a copy of the supposed libel, on behalf of the navy department; and that fact being found, the letter is to be regarded as the act of the department, and was on that ground admissible.

I am inclined to think the ruling admitting the plaintiff's testimony that he sold his furniture at a loss, upon being transferred from Portsmouth, may be sustained upon the doctrine of *Ingram* v. *Lawson,* 6 Bing. (N. C.) 212. That was a statement published in the *Times* newspaper, that a ship, of which the plaintiff was owner and master, and which he had advertised for a voyage to the East Indies, was not a sea-worthy ship, and that Jews had bought her to take out convicts.

The statement was held to be a libel upon the plaintiff, in his trade and business, for which he might recover damages without proof of malice, or allegation of special damage. The action was brought within three days after the publication of the libel. The plaintiff was permitted to prove at the trial what was the average profit to the captain of a ship upon an East India voyage, and that, upon the first voyage he took after the publication of this libel (it was also after the action was commenced), the plaintiff's profits were nearly £1,500 below the average.

The judges were unanimous in holding that the evidence was properly received on the question of damages. Mr. Sedgwick, speaking of this case, says,—" But evidence of profits was not regarded properly as a measure of damage ;" and, after quoting some remarks of the judges in rendering their judgments, he repeats,—" The evidence was admitted, not as a measure of damages, but to serve as a guide for the exercise of that discretion which, to a certain extent, is always vested in the jury." Sedgw. on Dam. 92. It does not appear here that the plaintiff undertook to state the amount of his loss on his furniture ; so that the loss from this cause could not have been made a measure of the damages. So far as the case shows, it was no more than a statement, made in general terms by the plaintiff, that he suffered inconvenience and loss as a direct consequence of the libel. His position was, that the libel caused his transfer from the naval station of Portsmouth. Whether he ought to recover anything for that reason depended upon whether the transfer caused him inconvenience and loss or not. Upon the whole, I am of opinion the verdict ought not for this reason to be disturbed.

The question as to the publication being privileged was rightly left to the jury. See authorities cited by the plaintiff.

The pleadings are not set out in the case as reported for our consideration, and without them I think it is impossible to say whether the instructions which the judge gave to the jury, and his refusal to give those requested by the defendant, were right or wrong. Certainly the case furnishes no evidence from which it can be concluded that they were wrong, and so no ground upon which the verdict can be set aside. But a copy of the pleadings was furnished us at the argument, and, upon an examination of the record, I think the rulings and charge of the court were right.

The second plea, which sets out certain specific facts going to show that the words were true, closes in this way : " And the defendant, believing that the public good required that said plaintiff should be removed from said office at said station, and that a suitable officer should be placed in his stead, and that the senators and representatives in congress from the state of New Hampshire were the proper persons and officers to be petitioned in order to procure the removal of said plaintiff from said office at said station, in good faith, and without any malice or ill-will to the plaintiff, but solely to procure the removal of the plaintiff from said office at said station for the public good, signed said petition," etc. Here is a most unequivocal and carefully drawn allegation that the occasion was lawful and the end justifiable.

It is an integral part of the same plea in which the facts are stated which go to show that the words were true. This plea comes nearer than any of the others to setting up the truth in justification. But the legal effect of the allegations quoted above is clearly a qualification of the preceding statements in the plea, insomuch that the plea would be sustained, as I understand it, by proof that the defendant had probable cause to believe and did believe that they were true, supplemented by proof of this additional allegation of the lawfulness of the occasion. *Palmer* v. *Concord*, 48 N. H. 217. At all events, it constituted a material part of the plea of justification, and, according to all the authorities, the defendant was bound to prove it substantially as set out. The instruction followed the plea, and required of the defendant nothing more than he was bound by law to do, namely, prove his justification as he had chosen to state it in his plea. 1 Ch. Pl. 494. My conclusion is, that the exceptions must be overruled.

CUSHING, C. J. In the case of *Beattie* v. *Hilliard*, 55 N. H. 428, it was held that a sufficient foundation is laid for the introduction of secondary evidence, by showing that the original paper is beyond the jurisdiction of the court. It appears, also, in this case, that the plaintiff went to the proper repository where this paper was kept, and where he left it before, and that on thorough search being made it could not be found. The witness having stated these facts positively, and his means of knowing the fact not being inquired into, the cases of *Dickinson* v. *Lovell*, 35 N. H. 9, and *Pearson* v. *Wheeler*, 55 N. H. 41, are authorities to show that the evidence was admissible. The court having found the necessary facts, that finding cannot be questioned here, the question of discretion not having been reserved.

As to the paper from Admiral Porter informing the plaintiff that he was transferred, and assigning the reason, there was competent evidence tending to show that he was the acting officer who had authority to order the transfer, and the evidence therefore was rightly admitted.

One of the natural and necessary and immediate consequences of the transfer was the necessary expense attendant upon the breaking up of the plaintiff's home at Portsmouth, and establishing a new home at the point to which he was transferred; and it appears to me that the evidence tending to show that as one of the circumstances was admissible.

The case as originally drawn makes no allusion to any special pleas. The case is drawn as if it had been tried on the general issue, and every defence admitted which could have been made by special pleading. The case of *State* v. *Burnham*, 9 N. H. 34, appears to have been taken as a just statement of the law on the subject of libels. I have carefully compared the charge of the court with the doctrine as laid down in that case, and have been unable to detect any material departure from it; and therefore, on the briefs first furnished, I found no difficulty in reaching the conclusion that there must be judgment on the verdict.

In the course of the discussion, however, it has come out that the

case was tried on special pleas as well as on the general issue, and assuming that those pleas were as stated in the report of the case of *Carpenter* v. *Bailey*, 53 N. H. 590, one of them being simply a justification alleging that the publication was true, the charge certainly was not adapted to such a plea.

I have thought proper to examine the pleadings, and it appears that they were designed to bring forward precisely the defence which was indicated in the case of *State* v. *Burnham*,—the issue on the second plea being that the words were true, and spoken on a justifiable occasion, and on the fourth plea, that the defendant believed them to be true.

The issues having been made up on these pleadings, it was the business of the court to try those issues. The court was not merely trying the question whether or not the publication was true, but also whether, if it were true, or, in the fourth plea, believed to be true, it was made on a lawful occasion. Whether the defendant was obliged so to restrict his defence or not, whether he could have stood safely upon a plea alleging the truth and nothing further, were matters with which the court on that trial had just nothing at all to do. The matter in hand was to try the issues, and nothing else. Section 11, of ch. 208, Gen. Stats., is by its terms limited to cases of double replication to the same plea, and is understood not to apply here. I am not aware of any particular in which it is suggested in the briefs that the charge was not correct in this particular.

There must, therefore, be judgment on the verdict.

SMITH, J. 1. The original of the alleged libellous letter was shown to be in the navy department at Washington when the copy was taken. The identity of the paper and the genuineness of the defendant's signature were fully proved. The original paper being beyond the custody or control of the witness, and beyond the process of the court, secondary evidence was properly admitted. *Beattie* v. *Hilliard, supra; Dunbar* v. *Marden,* 13 N. H. 311.

2. The plaintiff applied to the secretary of the navy for information in regard to his removal, and was referred to Vice-Admiral Porter, next in authority in the department of the secretary; and Porter was found in control of the department by the plaintiff. Here was evidence from which the court could find that the letter read in evidence was the official act of one who had authority. It was admissible as explaining the reason for the removal of the plaintiff.

3. Upon the question of damages, the rule is, that the plaintiff must state in his declaration any special damage he claims to have received, and must prove that it was exclusively, immediately, legally, and naturally the consequence of the libellous words. 1 Hilliard on Torts 258 (ch. 7, sec. 18). The plaintiff has alleged that by reason of the libel he was compelled to remove from Portsmouth, break up housekeeping, and sell his furniture at a loss. In *Knight* v. *Gibbs,* 1 A. & E. 43,

where the plaintiff was turned out of her lodging and employment by reason of slanderous words spoken of her by the defendant, Lord DEN-MAN, C. J., said,—" The proper question was, whether the injury was sustained in consequence of slanderous words having been used by the defendant." Injuries to the reputation consist in the pain inflicted, both bodily and mental, and in the expenses and loss of property which they occasion. 2 Gr. Ev., sec. .267 ;—see, also, *Woodbury* v. *Jones,* 44 N. H. 206 ; *Willey* v. *Paul,* 49 N. H. 397. Evidence that the plaintiff's furniture had been sold at a loss would not be admissible as a measure of damages, but as a circumstance showing that he had sustained loss in consequence of his removal from Portsmouth.

4. In *State* v. *Burnham,* 9 N. H. 45, PARKER, C. J., lays it down as a general rule, that if the occasion on which the alleged libellous matter was circulated was of itself a proper one, the defendant may justify the publication by proving the truth of the matter alleged ; that in this respect the same rule applies in criminal as in civil cases. In *Carpenter* v. *Bailey,* 53 N. H. 594, SARGENT, C. J., says the law as thus laid down by Judge PARKER has not been changed in the more recent decisions, and, so far as the principles of the defence are concerned, there is no substantial difference between a criminal and a civil case.

Whether the occasion of the publication of this alleged libel was lawful, depends upon the good faith and real purpose of the publisher, and therefore must necessarily be settled by the jury. In *Palmer* v. *Concord,* 48 N. H. 217, it was held that a court cannot rule that a communication is privileged, without assuming the conditions on which it is held to be privileged, namely, that it was made in good faith for a justifiable purpose, and with a belief founded on reasonable grounds of its truth. See, also, *Carpenter* v. *Bailey, supra,* 595 ; 2 Kent's Com. 21.

The defendant claims to justify not only by pleading that the words were true and spoken on a justifiable occasion, but that he believed them to be true. These were the issues tried, and the charge of the judge, in this view of the case, was certainly correct. It would be no sufficient justification to show that a part of the matter was true. *Carpenter* v. *Bailey, supra,* 594. The exceptions must be overruled, and there must be

*Judgment on the verdict.*